**TEXAS EMPLOYERS' INS. ASS'N v. FERGUSON.**

No. 14848.

Court of Civil Appeals of Texas. Fort Worth.

June 13, 1947.

Rehearing Denied Sept. 5, 1947.

Nelson, Montgomery & Robertson and Ernest Robertson, all of Wichita Falls, for appellant.

E. W. Napier, of Wichita Falls, for appellee.

HALL, Justice.

This is a workman's compensation case, tried in the 89th District Court of Wichita County, Texas. R. V. Ferguson was the employee, Deep Oil Development Company. was the employer, and Texas Employers' Insurance Association the carrier.

At a jury trial, the employee recovered judgment for compensation for total, permanent disability. The carrier has appealed.

Appellant seeks reversal under six points of error, each of which complains of improper argument upon the trial, by appellee's counsel. We shall later point out more specifically the offending arguments.

The evidence adduced, relating to the cause, nature and extent of appellee's disability was highly conflicting.

Because of the contentions of the parties in the respects last mentioned, we deem it proper to relate some parts of the testimony. Appellee testified that on June 7, 1945, he was in the employ of Deep Oil Development Company and in the course of his employment was engaged in stacking sacks of salt, weighing one hundred pounds per sack, and while thus engaged, he got a "crean" of some kind that caused a jerk in his back; that he did not inform anyone of his injury at that time, but kept on working for a day and a half afterward until the job was completed. That a day or so after he received the injury he decided he wanted to take off from work four or five days to be with his son then returning from the Army; that within a day or two afterward he began to run a temperature and went to a chiropractor for treatment; that on June 15, he went to Dr. Heymann for examination and treatment; that shortly after Dr. Heymann saw him he purchased a filling station and took possession of it on June 27; that he told the two parties from whom he purchased the filling station that he had hurt his back and needed lighter work. We note by the record that each of the sellers of the filling station testified that they did not remember any such statement being made to them by appellee. Appellee further testified that he went back to work for his employer on June 26 and worked that day, and asked the employer for a ten day vacation; that he took possession of the filling station which he had purchased on the next day, or June 27. He further testified that after he was released by Dr. Heymann, he went to Dr. Bailey Collins in November, 1945, and that Dr. Collins took pictures of him and treated him for about six weeks. He thereafter employed counsel, who sent him to Dr. M. W. Caskey; that doctor testified that he saw appellee for the first time on April 4, 1946, and testified upon the trial that when he saw appellee he was suffering from arthritis; that the pictures indicated that he had had it for a long period of time; that evidently the strain from lifting the sacks of salt tore some of the arthritic spurs loose in his back and impinged the spinal nerves, and that these things totally disabled appellee from doing manual labor and that his disability was permanent.

Dr. Heymann, who treated appellee on June 15, 1945, eight days after the alleged injury, testified that his X-ray pictures showed an arthritic back, which had developed over a long period of time and which was not attributable to any strain that appellee might have suffered eight days previously; that if appellee did receive a strain, he should have recovered from it in from two to six months; that the X-ray pictures did not show that any of the arthritic spurs or lime deposits had been torn loose or sheared off; that it would be impossible to shear these arthritic spurs by lifting one hundred pound sacks of salt; that they might be broken off by a direct blow to the back, in which case appellee would have immediately become incapacitated; that appellee was not suffering from such a condition as he had described but that he had completely recovered from the strain asserted by him when the witness again examined appellee on April 5, 1946.

Upon cross-examination appellee testified that he was a man past fifty years of age; that he began having prostate trouble in 1931, was operated on in 1934 for that trouble; that it again bothered him in 1940 and that he was again operated upon for the same trouble in 1945; that long prior to the time the prostate trouble appeared he had been going to a chiropractor for treatment for "catches in his hip" and that his left side was injured while running a tractor sometime in 1926, or 1927; that in 1944 he received an injury by the "popping of his neck" when a wrench slipped while working on a pipe-line but that the injury to his neck did not bother him very long; he further testified that he had his teeth removed about twenty years prior to the time he received the injury for which he instituted this suit.

No attempt is made by us to even refer to all the testimony, but the material conflicts are apparent. The jury determined by its verdict the controlling issues favorable to appellee's testimony. There is no contention made here that the testimony, as accepted by the jury, would not sustain the verdict. It is the contention of appellant before this court that several portions of the argument by appellee's counsel were inflammatory to such an extent that the jury

was induced to render a verdict otherwise than it would have done but for the objectionable arguments.

■ Points of error One and Two complain of arguments to the jury made by appellee's counsel when he stated to the jury in substance, that his client looked like a good man and his wife looked like a good woman and that if they were deliberately lying in order to collect money from the insurance company they were crooks and if they were lying they were committing perjury and should be in the penitentiary. And in his closing argument appellee's counsel said, in effect, that appellant's counsel in replying to his former argument had said that it is unnecessary for the jury to find that appellee was lying about this matter but that they could just refuse to allow him any compensation. Appellee's counsel then repeated that his client was either telling the truth about his injury or that he was just plain lying, and that if he was lying it was just plain perjury. There were other parts of his closing argument which emphasized what he had said in his opening argument. The record does not indicate that appellant made any objections to the argument of appellee's counsel in the matters mentioned. If the argument was improper and objection had been made to it at that time, the trial court would doubtless have sustained such objection and instructed the jury to disregard it. But having made no objection naturally there was no ruling of the court thereon. See Ramirez v. Acker, 134 Tex. 647, 138 S.W.2d 1054, 1056; Red Arrow Freight Lines, Inc., v. Matz, Tex.Civ.App., 182 S.W.2d 725; Alpine Tel. Corporation v. McCall, Tex.Civ.App., 195 S.W.2d 585, writ refused.

■ Appellee's argument complained of in point three is as follows: "Now they tell you that I am a wonder, you want to watch me, I am smart, I am smooth. They weren't complimenting me, they are not dumb enough to do a thing like that. They were telling you in a nice way that I am slick and I am sharp and tricky, and you must watch me, I am going to pull the wool over your eyes."

The bill of exception does not disclose that any objection was interposed by appellant's counsel to the above quoted argument. There appears in the record an argument made to the jury by appellant's counsel which refers briefly to appellee's counsel as being "just about as smooth talking and as good a trial lawyer as I ever saw, and I think he is the best compensation lawyer I ever did see or run into." In view of the argument of appellant's counsel last above noted, the argument made by appellee's counsel, made the basis of this point of error, was not such as would require reversal of this case; this is especially true when appellant did not object to it at the time, and procure a ruling of the court thereon.

Points Four, Five, and Six present asserted errors which have given us much concern. Point No. Four is based upon parts of the closing argument by appellee's counsel, which appears to be in this language:

"Of course you understand they (the defendant) have the right to write any kind of a policy they want to and the law approves it, and they charge according to the risk involved, and if the policy is liberally written they charge liberally—

"Mr. Robertson: We object to that, your Honor, there's no testimony concerning that.

"The Court: Sustained.

"Mr.Robertson: We request that it be withdrawn from the consideration of the jury.

"The Court: In sustaining the objection, you will not consider the remarks by counsel as to the premiums that were paid.

"Mr. Napier:—and so we assumed they charge according to the hazards, that would be right, wouldn't it?

"Mr. Nelson: We make the same objection to that, there is no testimony at all to support such an assumption.

"The Court: I sustain the objection."

Point No. Five is leveled at that portion of the closing argument of attorney for appellee wherein he made the following remarks:

"About Dr. Collins, you know I could have brought Dr. Collins here if I had wanted him, but I didn't want him. Dr. Collins couldn't tell me or you any more than Dr. Caskey or Dr. Heymann did.

"Mr. Robertson: If the Court please, I object to the conjecture what he could have told. He wasn't brought here, that's outside the record.

"The Court: I believe it is outside the record.

"Mr. Napier: Well, how could he have told us any more? The X-ray pictures are all they knew, and you can see they don't tell us much. You can't see much except a lot of trouble, his capacity or potentiality for a lot of trouble to this man's back. So I have the right to just call Dr. Caskey. Of course, if I had thought Dr. Collins could have told any more I might have brought him up here. If he didn't have any entanglements and if I thought he would make a good witness I might have brought him. But I hope I have the privilege and they do too, to select their own doctors, and they don't regulate the other side, tell them who to get."

It will be noted that an objection was made and sustained to a part of this argument. We think the ruling shown to have been made by the court was the equivalent of sustaining the objection. It will be noted however that appellee's counsel continued his argument, by attempting to justify his remarks just previously made. No objection seems to have been urged to the latter part of the argument made after the court ruled.

■ Many expressions may be found in the reported cases which set out rules and principles governing the effect of arguments by counsel when claimed to be inflammatory and calculated to create bias and prejudice in the minds of the jurors trying the case; however, these rules or principles are not in complete harmony in all respects as will be disclosed by a reading of the opinions by the various courts.

Some of the general principles which run throughout all the cases are to the effect that many arguments injected into a case may be deemed improper and if timely objections thereto are made, the harmful effect will be removed by the court sustaining the objection and giving a proper instruction to the jury thereon. While there is another class of arguments which in their nature are so vicious and inflammatory that a harmful effect will necessarily follow, irrespective of objections and actions of the court thereon.. In this class of offending arguments, the courts hold that a reversal will follow, apparently to penalize the parties whose counsel so flagrantly violate the rules of propriety.

Sixth Point embraces substantially all of those previously mentioned, and treats the matters complained of as a group, arguing that even if no one of them taken alone should require a reversal, that all taken together inevitably force such a conclusion. Our courts have, in some instances, taken cognizance of similar contentions.

■ In view of the principles announced in the numerous decisions by our Supreme Court and those approved by it, which involve arguments claimed to present reversible error, we conclude that each case must be decided upon the facts and circumstances presented by the record, keeping in mind precedents laid down by our court of last resort. There is no set standard by which any particular case can be measured. We think the present case is a border-line case suspended somewhere between the holdings by the Supreme Court in King v. Federal Underwriters' Exchange, 144 Tex. 531, 191 S.W.2d 855, and Smerke v. Office Equipment Co., 138 Tex. 236, 158 S.W.2d 302. We also think it not untimely to again remind the bar, generally, of the admonition given by the Supreme Court in Woodard v. Texas & P. R. Co., 126 Tex. 30, 86 S.W. 2d 38, which in substance said that if counsel for a party, through his zeal, exceeds the bounds of propriety and the rules of legitimate argument and his client's judgment is reversed on that account, he has no one but himself to blame for it.

■ Applying the rules made applicable by the great weight of our adjudicated cases, after a very thorough study of the assigned errors, we have concluded that the several portions of the argument pointed out are no more persuasive of a required reversal than are those set out in the following decisions in which reversals were denied. Texas & N. O. R. Co. v. McGinnis, 130 Tex. 338, 109 S.W.2d 160; Jackson v. Edmondson, Tex.Civ.App., 129 S.W.2d 369, reversed on other parts 136 Tex. 405, 151

S.W.2d 794; Ramirez v. Acker, 134 Tex. 647, 138 S.W.2d 1054; Missouri, K. & T. R. Co. v. McKinney, 136 Tex. 75, 145 S.W.2d 1081; Snodgrass v. Robertson et al., Tex. Civ.App., 167 S.W.2d 534; Fambrough v. Wagley, 140 Tex. 577, 169 S.W.2d 478; Texas & N. O. R. Co. v. Sturgeon, 142 Tex. 222, 177 S.W.2d 264; Phoenix Refining Co. v. Morgan, Tex.Civ.App., 178 S.W.2d 175, writ refused; Shaw et al. v. Porter, Tex. Civ.App., 190 S.W.2d 396; King v. Federal Underwriters Exchange, 144 Tex. 531, 191 S.W.2d 855; Alpine Tel. Corporation v. McCall, Tex.Civ.App., 195 S.W.2d 585, writ refused; Howard v. Sears, Tex.Civ. App., 196 S.W.2d 105, 106; Younger Bros. v. Marino, Tex.Civ.App., 198 S.W.2d 109.

Under the authority of the above cited cases, we overrule all points of error and affirm the judgment of the trial court.