**CANNADY v. DALLAS RY. &
TERMINAL CO.**

No. 15022.

Court of Civil Appeals of Texas.
Fort Worth.
April 15, 1949.

Caldwell, Baker & Jordan and Russell M. Baker, all of Dallas, for appellant.

Burford, Ryburn, Hincks & Ford and Howard Jensen, all of Dallas, for appellee.

SPEER, Justice.

Lon. Cannady sued Dallas Railway & Terminal Company for personal and property damages sustained in a collision between his Ford truck and a street car at a street intersection in the City of Dallas, Texas.

No question is raised here challenging the sufficiency of the pleadings. Trial was to a jury on special issues.

All acts of primary negligence and contributory negligence were properly pleaded. The issues and their answers reveal the contentions of the respective parties. The jury verdict convicted defendant of several acts of negligence proximately causing the collision and acquitted it of other acts charged by plaintiff. Defendant charged plaintiff with contributory negligence in several respects; the jury acquitted him of all except one. Plaintiff moved the court to disregard the unfavorable questions and answers and that judgment be entered for him on the remainder of the verdict. The motion was overruled and a take nothing judgment was entered against plaintiff on the verdict. This appeal followed.

The jury verdict found defendant negligent, proximately causing the accident, in the following matters: (2) Operating the street car at a greater rate of speed than a person of ordinary care would have operated it immediately prior to the accident; (5) failing to stop the street car immediately before entering the intersection; (6) failing to yield the right-of-way to plaintiff; and (7) failing to keep a proper lookout. There was a finding that the accident was not an unavoidable one.

As against plaintiff it was found (10) he failed to keep a proper lookout after he entered the intersection, and by (11) such failure was a proximate cause.

The jury found the amount of damages sustained by plaintiff to his truck, for doctor's bills and for personal injuries.

■■ It is the settled policy of our law that negligence by an injured party which proximately causes his injury precludes a recovery although it was shown that the defendant was guilty of negligence and proximate cause. It has been held that contributory negligence and proximate cause are an absolute defense to an action for injuries sustained. 30 Tex.Jur. 754, sec. 88. When discovered peril is involved the general rule is altered.

The first three points of assigned error complain of the court overruling plaintiff's motion to disregard the answers to special issues 10 and 11, above pointed out, because, (a) "as a matter of law no causal connection is shown to exist between plaintiff's failure to keep a proper lookout after he entered the intersection and the resulting collision"; (b) the jury having found under other special issues that plaintiff kept a proper lookout before entering the intersection, that defendant failed to yield the right-of-way to plaintiff, that when plaintiff entered the intersection the street car had not entered it, plaintiff's failure to keep a proper lookout after he entered the intersection could not, as a matter of law, be a proximate cause of the collision; and (c) the evidence was insufficient to support the answers to either of the issues 10 and 11.

The court's charge contained the often approved explanation of "proximate cause." The explanation contained such elements as "new and independent cause" and "foreseeableness." The court instructed the jury that there may be more than one proximate cause.

■ Not every act of negligence is a proximate cause of an occurrence. Many times there may be more than one proximate cause. As a general rule whether or not an act is a proximate cause becomes an issue of fact for jury determination.

■■ Under applicable rules of law in this state, whether or not certain acts constitute negligence or contributory negligence are fact issues; each is to be determined by the standard of ordinary care. 30 Tex.Jur. 756, sec. 90. It has been held that proximate cause, like negligence, is an issue of fact to be determined by the jury if one is had. 30 Tex.Jur. 723, sec. 62.

■ It is the settled law in this state that a failure to keep a proper lookout can only be deemed a proximate cause of an accident when it appears that the keeping of such lookout would have prevented the accident which followed. Texas & Pacific Railway Co. v. Shoemaker, 98 Tex. 451, 84 S.W. 1049. This rule has been consistently followed by our courts.

Plaintiff testified that he stopped at the intersection and looked both to his right and left and the jury found that at that time he was keeping a proper lookout. Plaintiff further tesified, substantially, that when he stopped at the interesection and looked to his right he saw the street car leaving the next intersection a block or about 300 feet away; that he waited until the third car passed him going to his right and then pulled up in low gear to the first set of street car tracks and again looked to his right and saw the street car coming about 150 feet and "figured" it was going at least 30 miles per hour; that he then shifted into second gear to go on through and that was the last thing he remembered.

■ It is quite obvious that the jury disbelieved plaintiff's statement in which he said he looked at the street car a second time and saw it 150 feet away. The testimony of a party to a suit, as was plaintiff in this case, only raises a jury issue. Simmonds v. St. Louis B. & M. R. Co., 127 Tex. 23, 91 S.W.2d 332; Scott v. Gardner, 137 Tex. 628, 156 S.W.2d 513, 141 A.L.R. 50. There are circumstances and other direct testimony which tend to contradict plaintiff's theory that he looked the second time.

It seems that Main Street is approximately 50 feet wide; that there are parallel car tracks on it; that the first set of tracks crossed by plaintiff were about 14 feet from the curb line; that a pair of car tracks are 4½ feet apart and the outside rails of each pair are about 5 feet apart. It follows that it was only

9 feet from where plaintiff said he was when he looked the second time and saw the street car 150 feet away to where he was struck. A Mr. Jeffers testified at the instance of plaintiff; he said he saw the accident; at one time he testified favorable to some of plaintiff's contentions but being confronted with a signed statement which he had made three days after the accident, which happened over two years prior to the trial, he admitted his recollection about the transaction at that time was better than when the trial was had and that he had said in the statement that the street car bell first attracted his attention immediately before the accident and at that time the car and the truck were not over 10 feet apart. A Mr. Hendricks was called by defendant; he said he saw the accident and that when he first observed them the truck and the street car were each traveling 8 or 10 miles per hour and were then 8 or 10 feet apart. The claim agent of defendant testified that he talked to plaintiff next day after the accident and in substance said plaintiff told him he saw the street car coming about 25 feet away and that it was traveling at least 40 miles per hour and at that time plaintiff said he thought he had enough time to beat it. The witness said he wrote those statements down at the time and at plaintiff's request his wife signed it for him. Joe Pickens, the operator of the street car, said he was involved in the accident which occurred in November, 1945; that the car he was operating was between 35 feet and 44 feet long; that Oakland Street, where the accident happened, was not a passenger stop; that in the middle of the block he was going about 15 miles per hour; that as he approached Oakland Street he shut off his power and "pinched" down on the air as his rules required; that he saw plaintiff's truck about 25 feet before it reached Main Street and that his street car was about the same distance from Oakland Street; that a passenger stood on the corner and witness rang his bell to inform the passenger he did not stop. The witness said after he had slowed down to enter the intersection he turned the current on again 4 or 5 feet from the line of Oakland Street and

that it was then he saw plaintiff was going on through; that he then reversed his power, applied his air brakes and sanded the rails; he explained how quickly this could be done; that he made an emergency stop; that in emergency stops the wheels will slide some on the steel rails. Two passengers on the street car said it slowed down as it approached Oakland Street and came to a very sudden stop at about the time of the collision.

In determining if a motion to disregard a verdict should be sustained the court will view all the testimony in the light most favorable to the verdict and if when done there is evidence of probative value to support the verdict the motion to disregard will be overruled. Le Master v. Fort Worth Transit Co., 138 Tex. 512, 160 S.W.2d 224; Rodriguez v. Higginbotham-Bailey-Logan Co., 138 Tex. 476, 160 S.W.2d 234.

In his motion for judgment non obstante veredicto, plaintiff urged that under the circumstances of this case he was under no duty to keep a lookout after he entered the intersection. We cannot assent to this doctrine. The only reason to impose upon him the duty to keep a lookout before entering the place of danger is because of the hazard incident to it. To say that he looked before entering certainly would not license him to close his eyes and barge through an intersection where there was obviously a known danger. In the circmstances before us we are convinced that if plaintiff had kept such lookout after entering the intersection as a reasonably prudent person would have done he would have discovered the approaching street car in time to have avoided the collision. He said in substance that he was driving slow enough that he "could have stopped on the ground he stood on." True, the jury found he was not negligent in failing to stop but this is all the more persuasive that he did not keep a proper lookout after entering the intersection.

Under the facts as related, it is clear to us that there was a causal connection between plaintiff's failure to keep a lookout and the accident that followed. We

also conclude that under the rules of law above pointed out there was sufficient evidence to support a jury verdict in response to special issues 10 and 11.

The three points of error must be overruled.

Fourth point complains of error in the court's refusal to declare a mistrial upon plaintiff's motion, because the answers to special issues 10 and 11 are in conflict with the answers to special issues 16, 21 and 22 and each is destructive of the others.

By the answers to special issues 10 and 11 the jury found that plaintiff failed to keep a proper lookout after entering the intersection and that such failure was a proximate cause of the collision. Answering issue 16 the jury found that plaintiff's failure to stop his automobile after he entered the intersection immediately before the collision was not negligence. By answer to issue 20 the jury found that plaintiff failed to turn his automobile to the left to avoid the collision. By answer to issue 21 the jury found that such failure to turn to the left as asked in issue 20 was negligence and answering issue 22 they said it was not a proximate cause.

Plaintiff recalls defendant's pleading to the effect that if plaintiff had been keeping a proper lookout after he entered the intersection, he could and should have seen the approaching street car and could have stopped or turned his truck to the left and thus avoided the collision and that he was guilty of contributory negligence in failing to do one or the other. He then argues that "there is not the slightest suggestion from the record that plaintiff could have done anything else to avoid the collision *had he perceived the danger* (our emphasis) except to stop or turn to the left."

We see no irreconcilable conflict between the answers. In the first place the establishment by defendant of any one of the several acts of contributory negligence and proximate cause would preclude a recovery by plaintiff. In the next place it is only reasonable to suppose that plaintiff would not have stopped his car in that busy intersection or that he would turn it to the left to avoid a collision unless he had previously kept a lookout for danger and by doing so "had perceived the danger." The jury, having found that plaintiff did not keep a lookout after entering the intersection, must have believed that plaintiff did not see the street car and thus "perceive the danger," and in the absence of any evidence that he did stop or turn his car to the left to avoid the accident, the most logical answers they could have made under the facts were those they did make.

Fifth and sixth points assert error occasioned by what is claimed to be improper argument of counsel for defendant.

An understandable statement of what happened involves all too much space and painstaking analysis of the record; we shall be as brief as fairness will permit.

Fifth point is based on plaintiff's first bill of exception. The bill shows that defendant's counsel was discussing special issue 8A; that issue submitted the usual inquiry applicable to discovered peril relating to the acts of the operator of defendant's street car. Counsel either read or quoted the special issue. He then paraphrased the question somewhat in laymen's lore and told the jury "that is what the court is asking you." Doubtless to procure a negative answer to the question counsel then said: "If Joe Pickens, the car operator * * * saw this man * * * in a perilous position * * * and knew he could not get out and that he was bound to get hurt * * * and the operator said to himself 'let him do the best he can, I'm going to blare down through there and let him do the best he can,' if Joe Pickens did that, if he failed to use all the means at hand after he discovered the man was in a dangerous position, he ought to be over there in the jail house." Plaintiff's counsel objected to the argument because it was "prejudicial and inflammatory."

The court approved the bill of exception with a qualification to the effect that the argument was in reply to that of plaintiff's counsel while previously discussing the issue on discovered peril. That plaintiff's counsel had asked the jury to answer it

finding that Joe Pickens, the operator, saw, discovered and realized the perilous position of plaintiff and after so seeing, discovering, and realizing such perilous position that he had sufficient time to have used the means at hand and prevented the collision, and to find that he failed to use such means, which failure was negligence and a proximate cause of the collision. The qualification further stated that the court did not rule on the objection nor was there a request for the jury to disregard the argument.

The sixth point is·referable to the second bill of exception which relates to another part of the argument by defendant's counsel. The substance of that argument is that defendant's counsel was impressed by the manner plaintiff's counsel had discussed each and all of the special issues relating to the negligence of the operator of the street car and wanted the jury to answer all questions "yes" when it put the blame on the motorman, and also wanted the jury to say "no" to all questions that would put the blame on plaintiff. Defendant's counsel then argued that to him it was another example of the reasonableness of their position. In this connection he said: "They want you to say 'Oh, we didn't have anything to do with it, we were just innocent victims. He didn't have a thing to do with it * * * he didn't cause it.' * * * . The court instructed you there can be more than one proximate cause; you might find something the operator did was a proximate cause but that doesn't keep you from finding something Mr. Cannady did was a proximate cause." Counsel for defendant then asked the jury to read the court's definition of proximate cause and advised them they would then understand what it was all about. "They want to put it on the back of the street car company, it is big and strong, they don't want to take any percentage of the blame * * * let them go scot-free."

Objection was made to the last argument claiming that it was an attempt to "call in the plea of comparative negligence." Immediately after the objection was made defendant's counsel said, "All I am saying is that you (the jury) can consider whether or not one side or the other is taking the position that seems to you as reasonable or understandable."

The bill was qualified by the court in effect that defendant's counsel argument was in reply to that of plaintiff's counsel, wherein he had argued each issue separately and asked the jury to find the defendant guilty of negligence and proximate cause on each issue from 1 through 8 and to answer "no" to each issue from 10 through 26, which inquired of plaintiff's negligence. The court added that he did not rule on the objection and that there was no request for an instruction to disregard it.

Asserted "improper argument" has demanded the attention of our courts many times. Varying conditions present different results. The complaints here present only (a) that the first argument complained of was "prejudicial and inflammatory" and (b) that the second argument called in the "plea of comparative negligence."

Even when limited to the grounds of objection here urged there are several rules applicable. They are: ·(1) If the offending argument is such that its damaging effect can be cured by the court sustaining an objection and instructing the jury not to consider it and these things are done, no reversible error is shown; (2) if the objectionable argument is a fair response to opposing counsel's preceding argument there is no error; and (3) parties are generally bound by the trial court's qualification on the bill of exception.

The argument referred to in the first bill of exception relates to the special issues inquiring about plaintiff's claim that the street car operator was negligent after discovering plaintiff's perilous situation. The doctrine of discovered peril only involves negligence arising after such actual discovery and never includes negligence in failing to make such discovery earlier. Special issue·8A, involved here, embraces the elements of discovered peril by defendant's agent and appropriate inquiry if they existed and the jury answered "no."

As we view the argument complained of in the first bill of exception it was not such that any harmful effects presented by it could not have been cured by the sustain-

ing of an objection and instruction to the jury not to consider it. Ramirez v. Acker, 134 Tex. 647, 138 S.W.2d 1054; Moncada v. Snyder, 137 Tex. 112, 152 S.W.2d 1077; King v. Federal Underwriters Exchange, 144 Tex. 531, 191 S.W.2d 855. It will be observed that the trial court did not rule on the objections to the argument and no request was made for the jury to disregard it.

The argument objected to is shown by the qualification of the bill by the court to be in reply to previous arguments by plaintiff's counsel, in which he had argued that the jury should answer the issue "yes." The reply argument, to which objection was made, consisted of counsel's word picture, even though it was extravagant in its nature, as to what should be done with a man like the street car operator if he deliberately injured plaintiff after discovering his perilous position. It cannot be doubted that an affirmative answer to the issue on discovered peril would, in some of its implications, have carried certain elements of a criminal offense. Where the doctrine of discovered peril has been involved the courts have frequently scrutinized language of counsel defending against a finding in support of the doctrine. Several times advocates have argued the similarity of the doctrine to that of findings of crime against those charged with that kind of negligence and in each instance such arguments have been held not to present reversible error. Sugarland Industries v. Daily, 135 Tex. 532, 143 S.W.2d 931; Saenger v. Dallas Railway & Terminal Co., Tex.Civ.App., 67 S.W.2d 351, writ refused; McMillion v. Wilkinson, Tex. Civ.App., 135 S.W.2d 231, writ dismissed, judgment correct.

 Much latitude is given counsel in reply argument to that of his adversary. 41 Tex.Jur. 798, sec. 75; ibid. 802, sec. 78; see also Texas Employers Insurance Ass'n v. Ferguson, Tex.Civ.App., 204 S.W.2d 197,

writ refused, n. r. e. In the early case of International & G. N. Ry. Co. v. Irvine, 64 Tex. 529, our Supreme Court laid down the rule that it is only in cases in which the preponderance of the evidence is against the verdict that improper argument alone requires a reversal of the judgment. In the instant case the jury had only the testimony of the street car operator on the point at issue, there was none to the contrary.

We have carefully studied the sixth point referable to the second bill of exception in which it is claimed that the argument of defendant's counsel injected into the case the rule of comparative negligence. We must accredit the jury as being reasonably intelligent; they knew of course that the motorman was not on trial under a charge of a criminal offense and they must have known under the charge of the court that they were only called upon to answer the issues submitted to them from the evidence admitted by the court. No question was propounded to the jury the answer to which would have brought the question of comparative negligence into the case; as diligent and scrupulously careful as was plaintiff's counsel, as evidenced by the record, we think the objection was no more than a painstaking precaution, for which any counsel, situated as he was, should be commended. The offending argument under this bill of exception does not purport to raise the question before the jury of comparative negligence. The subsequent remarks by defendant's counsel in an effort to explain what he meant by his previous statements clearly indicate that he was only asking the jury to consider the court's charge. Much that we have said concerning the fifth point of assigned error is applicable to the sixth.

A careful study of this record forces us to the definite conclusion that no reversible error has been presented and that the judgment of the trial court should be and it is hereby affirmed.