Pearl BOGGS, Appellant,

v.

R. P. KING, Appellee.

No. 7715.

Court of Civil Appeals of Texas.

Amarillo.

May 15, 1967.

Rehearing Denied June 19, 1967.

Witherspoon, Aikin, Thomas & Langley, Hereford, E. Hazen Woods, Jr., Hereford, of counsel, for appellant.

Albert Smith, Lubbock, for appellee.

NORTHCUTT, Justice.

Appellant, Pearl Boggs, a widow, instituted suit in her own behalf, as plaintiff, and hereafter referred to as appellant, against R. P. King, defendant, and hereafter referred to as appellee, in the District Court of Crosby County, Texas, for damages suffered by her when she struck by an automobile driven by R. P. King as she was crossing a four-lane highway within the city limits of Crosbyton, Texas. The case went to trial on plaintiff's second original amended petition and defendant's third amended original answer. The case was tried to a jury and special issues were submitted on the issues of appellee's primary negligence, appellant's contributory negligence, sudden emergency and in connection with the discovery by appellee of the perilous position of the appellant. Issues were also submitted to the jury in connection with damages and the jury returned a verdict on the damage issue in the amount of $8,000.

Judgment was rendered upon the verdict of the jury that the plaintiff recover nothing. From that judgment the plaintiff perfected this appeal. As to appellee's primary negligence, the jury found appellee was negligent in several matters. As to appellant's contributory negligence, the jury found appellant was guilty of contributory negligence in several matters. However, this appeal deals only with the issues concerning discovered peril.

The special issues and answers thereto concerning discovered peril as submitted were as follows:

### "SPECIAL ISSUE NO. 23

"Do you find from a preponderance of the evidence that the Plaintiff was in a position of peril at such a time that the Defendant, by the use of the means at hand and in safety to himself and his passengers and the automobile, could have avoided the collision in question?

"Answer 'yes' or 'no'

"Answer: YES

"If you have answered the preceding Special Issue No. 23 'yes', and only in that event, then answer the following:

### "SPECIAL ISSUE No. 24

"Do you find from a preponderance of the evidence that the Defendant discovered this perilous position, if any, in which the Plaintiff was in and realized such perilous position, if any, of the Plaintiff in such time so that by the use of the means at hand and in safety to himself, the passengers in his automobile, and the automobile that he was driving, he could have avoided injury to the Plaintiff?

"Answer 'yes' or 'no'

"Answer: YES

"If you have answered the preceding Special Issue No. 24 'yes', and only in that event, then answer the following:

### "SPECIAL ISSUE NO. 25

"Do you find from a preponderance of the evidence that the Defendant, after such discovery and realization, if any, of the perilous position, if any, of the Plaintiff, failed to use the means at hand consistent with the safety of himself, and the automobile that he was operating and the passengers in the car, to avoid injury to the Plaintiff?

"Answer 'yes' or 'no'

"Answer: YES

"If you have answered the preceding Special Issue No. 25 'yes', and only in that event, then answer the following:

### "SPECIAL ISSUE NO. 26

"Do you find from a preponderance of the evidence that such failure, if any, was negligence?

"Answer 'yes' or 'no'

"Answer: NO

"If you have answered the preceding Special Issue No. 26 'yes', and only in that event then answer the following:

### "SPECIAL ISSUE NO. 27

"Do you find from a preponderance of the evidence that such negligence, if any, was a proximate cause of the injuries to the Plaintiff?

"Answer 'yes' or 'no'

"Answer: ___"

Appellant presents this appeal upon four points of error as follows:

### "POINT 1

"THE TRIAL COURT ERRED IN REFUSING TO SET ASIDE THE JURY FINDING TO SPECIAL ISSUE NO. 26, BECAUSE A FINDING OF NO NEGLIGENCE IN APPELLEE FAILING TO USE THE MEANS AT HAND TO AVOID INJURY TO APPELLANT AT A TIME WHEN HE COULD DO SO WITH COMPLETE SAFETY TO HIMSELF, TO OTHER PASSENGERS, AND TO HIS AUTOMOBILE, AND AFTER REALIZING THAT SHE WAS IN A PERILOUS POSITION, IS CLEARLY AGAINST THE GREAT WEIGHT AND PREPONDERANCE OF THE EVIDENCE SO AS TO BE CLEARLY WRONG.

"POINT 2

"THE TRIAL COURT ERRED IN REFUSING TO SET ASIDE THE JURY FINDING TO SPECIAL ISSUE NO. 26, BECAUSE A FINDING OF NO NEGLIGENCE IN APPELLEE FAILING TO USE THE MEANS AT HAND TO AVOID INJURY TO APPELLANT WHEN HE COULD HAVE DONE SO WITH COMPLETE SAFETY TO HIMSELF, TO OTHER PASSENGERS, AND TO HIS AUTOMOBILE, AFTER REALIZING THE PERILOUS POSITION OF APPELLANT, IS WHOLLY AND COMPLETELY INCONSISTENT WITH THE JURY FINDINGS IN RESPONSE TO SPECIAL ISSUES NOS. 23, 24, AND 25, AND WITH THE REMAINDER OF THE JURY VERDICT AS A WHOLE.

"POINT 3

"THE JURY FAILED TO ANSWER SPECIAL ISSUE NO. 27, WITH RESPECT TO WHETHER OR NOT THE NEGLIGENCE IN FAILING TO USE THE MEANS AT HAND TO AVOID INJURY TO APPELLANT WAS A PROXIMATE CAUSE OF APPELLANT'S INJURY, DENIED APPELLANT THE RIGHT TO A JURY TRIAL AND A SUBMISSION ON AN ISSUE CLEARLY RAISED BY THE EVIDENCE AND THE PLEADINGS.

"POINT 4

"THE TRIAL COURT ERRED IN REFUSING TO ENTER JUDGMENT FOR APPELLANT BECAUSE THE JURY FINDINGS IN RESPONSE TO SPECIAL ISSUES NOS. 23, 24, AND 25 CONTAIN AFFIRMATIVE ANSWERS TO ALL OF THE ELEMENTS OF THE DOCTRINE OF DISCOVERED PERIL."

The appellant made no objections to the court's charge. The appellee objected to the court's charge as to Special Issues 23, 24, 25, 26 and 27 because those issues omitted the requirement or element that the jury find that the defendant realized that the plaintiff probably would not extricate herself from a dangerous position or a perilous position, if any.

■ Since all four of appellant's points of error are interrelated, we will discuss all of them together. In order for the appellant to bring this case within the doctrine of discovered peril, it was necessary for appellant to prove that the appellee actually discovered and realized appellant's perilous position in time to have avoided the collision by the exercise of ordinary care in the use of all means at his command. In Texas & New Orleans Ry. Co. v. Hart, 163 Tex. 450, 356 S.W.2d 901 (1962) it is stated:

"On the other hand, the fact of timely realization of the danger may be established by circumstantial evidence. Creech v. Thompson, 156 Tex. 561, 297 S.W.2d 817 (1957). To raise the issue of discovered peril here, it was only necessary for the plaintiffs to show that the defendant realized, in time to have avoided the collision, that plaintiffs were in a position of peril, and were pursuing, and probably would continue to pursue a course that was likely to result in their being injured. Ford v. Panhandle & Santa Fe Ry. Co., 151 Tex. 538, 252 S.W. 2d 561 (1952); Safeway Stores, Inc. v. White, cited just above; Galveston, H. & S. A. Ry. Co. v. Wagner (Tex.Com. App.1927), 298 S.W. 552. The quantum of proof required of the plaintiffs on these elements of discovered peril, in order to entitle them to have the jury pass upon them, was such facts and circumstances as, taken together with all reasonable inferences therefrom, constituted some evidence of probative force of their existence. Ford v. Panhandle & Santa Fe Ry. Co., cited just above.

"Viewing the evidence in the light of these principles, it is our opinion that the issue of discovered peril was not

raised. There is an absence of proof that the fireman discovered the perilous position of the girls in time to have avoided the collision, or that he failed, after such discovery, to exercise ordinary care in the use of the means at his command to have avoided the injury to them."

It is undisputed that appellee was sixty some odd feet from appellant when he first realized her peril. Then the only question to be determined is: Did appellee fail after such discovery to exercise ordinary care in the use of the means at his command to avoid the injury?

Appellant was crossing from south to north across the street designated U. S. Highway 82 in Crosbyton, Texas. The highway is a four-lane highway running east and west and appellee was going west on the inside lane. Mr. Griffin testified he saw appellant going across the highway and saw the car coming on at the same time. He was asked, "And then what did Mrs. Boggs do?" His answer was, "Well, she walked out to the middle of the road and she stopped, just for—just a brief second, and went one step and the car hit her." The appellee testified in part as follows:

"Q. Over what period of time did you observe Mrs. Boggs?

"A. Well, now, did you ever get into a place like that and try to figure time, after it was over?

"Q. Well,—

"A. I just couldn't tell you, sir, I just—

"Q. You just don't know?

"A. No, sir, I just couldn't tell you.

"Q. All right. Then over what distance did you observe Mrs. Boggs traveling?

"A. Well, I just couldn't tell you.

"Q. Did you see her when she first—

"A. I saw Mrs. Boggs—

"Q. —reached the edge of the highway?

"A. —when she stopped—I saw Mrs. Boggs when she stopped on that center line.

"Q. You didn't see her before she—

"A. When she paused—yes, I saw her before that, when I was back up the street there I saw a lady out in the street, and a car coming, meeting me. And she was on the other side of that car from me when I was back up the street there."

\* \* \* \* \* \*

"Q. All right, sir. And you think now, to the best of your recollection, you saw her 60 some odd feet before you hit her?

"A. That's—when I saw that she was going to come on across the highway, yes, sir.

"Q. All right, sir. What did you do?

"A. Well, I got on my brakes, and I got on my horn, and tried to stop my car before I got to her.

"Q. All right, by this you mean you put your—you locked all four wheels?

"A. That's ordinarily so, yes, sir, on electric brakes.

"Q. Not ordinarily, did you out there this—

"A. Well, it looked that way by the skid marks, I wouldn't swear that all four wheels was locked, but I'll go out there and show you that—

"Q. You did on your deposition, didn't you?

"A. Well, I—

"Q. You said that you locked all four wheels?

"A. Yes, sir. I did, and I'll—

"Q. Yes, sir.

"A. —I'll bet money that they were.

"Q. All right, sir.

"A. That's on electrical brakes, and I don't think that there's ever a wheel that wouldn't lock, but—

"Q. All right, sir. Now, you say you sounded your horn?

"A. Yes, sir.

"Q. When you were 60 some odd feet away?

"A. I sounded the horn just as quick as I decided the lady was coming on across the highway.

"Q. And you left skid marks out there on the road?

"A. Yes, sir.

    *    *    *    *    *    *

"Q. Mr. King, out here when you saw Mrs. Boggs 60 some odd feet away, was there anything to keep you from turning your car to the right? Was there anything—any obstruction over here on the right that you would have run into if you had turned your car enough to miss her either five or six feet?

"A. Well, now, I just don't know how much it would have taken to have missed her.

"Q. Well, about—

"A. But if I hadn't applied my brakes, I could have probably got farther over on the highway, but I don't know how far I'd had to have cut to have missed Mrs. Boggs. I may have had to gone on up in that filling station, I don't know how fast she going.

"Q. All right, sir. Now, let's try to establish as a matter of fact how much you did turn from the time you saw Mrs. Boggs until the time you hit Mrs. Boggs. About where was your car with respect to the lanes on this highway at the time you first saw Mrs. Boggs?

"A. Well, I just don't know. I was in —I think I was in the left-hand lane. Now, I'm not sure. I don't know.

"Q. The left-hand lane closest to the double stripe?

"A. That's right. Inside lane.

"Q. All right, sir. And you wouldn't estimate where you were—

"A. No, sir.

"Q. —in that lane?

"A. No, sir, I wouldn't because I don't know.

"Q. Would you estimate—did you try to turn your car, Mr. King, at all?

"A. Yes, I tried to turn my car.

"Q. Were you trying to turn to the right or to the left?

"A. To the right, yes, sir, to the right.

"Q. You tried to turn to the right?

"A. Yes, sir.

"Q. But how much did you actually turn your car—

"A. I can't tell you. I don't know.

"Q. You wouldn't say you turned it at all?

"A. I wouldn't say that I did or I didn't, no sir.

"Q. Just don't know?

"A. No, sir, I just don't know whether the car turned or not.

"Q. But, at any rate, you couldn't have turned it much in that distance to

"have been with your left wheel still in that lane at the time your car came to a stop, could you?

"A. No, sir. The main—the first thought that hit me was to stop before I got to the lady, that's the first thought that hit me."

\*    \*    \*    \*    \*    \*

"Q. Mr. King, when Mrs. Boggs paused out there on the center of the street, what did you think she was going to do?

"A. I thought she was going to wait for me to go on by. I thought she had seen my car."

\*    \*    \*    \*    \*    \*

"Q. Did she or not appear to be in a position of danger to you before she stepped into the north half of the street?

"A. No, sir, I think she was just as unconscious of that car being there as she could possibly be.

"Q. Well, if she had stayed where she stopped, would your car have touched her?

"A. No, sir."

\*    \*    \*    \*    \*    \*

"Q. All right, sir. And do you think that if you see an obstruction no larger than Mrs. Boggs here 60 feet down the road, or 65 feet down the road, do you think that in the condition you were in that morning you could turn your car to the left or right, assuming you have 20 or 30 feet on either side, enough—and fast enough to miss that obstruction?

"A. I certainly could have if I'd knew the obstruction was going to move on out in front of me, I sure could have."

\*    \*    \*    \*    \*    \*

"Q. All right, sir. And how far did your car move forward, as nearly as you can tell the Court and jury, after the contact was made?

"A. Well, I don't think my car moved many inches. Now, it's just like it's been testified here all along, as far as knowing the exact distance of those things, I don't know, but my car was just practically still; if it wasn't, it didn't like but very, very little being still when the impact was made."

\*    \*    \*    \*    \*    \*

"Q. And if, as a matter of fact, there was not a curb over here between the roadway and this—and this implement house, there was no reason why you couldn't have turned out there six or eight lengths—

"A. No, sir, I don't suppose there is.

"Q. —car lengths—

"A. I don't suppose there'd be any reason for that except that I was just trying to stop before the lady hit my car.

"Q. All right, sir. Now, as a matter of fact, if you saw her down here 60 some odd feet before you hit her, if you hadn't turned on—if you hadn't applied your brakes, you could have missed her, couldn't you?

"A. I wouldn't swear to that, no, sir. I don't know whether I could have or not."

Mr. Court, the highway officer, testified "with the brakes locked down you can't turn a vehicle one way or the other." Court further testified as follows:

"Q. \* \* \* Now, was the—this north and south lanes here further divided in any manner?

"A. Yes, sir. There were two lanes of travel in both the westerly and easterly directions.

"Q. And did they have anything to indicate where each of those lanes divided?

"A. Yes, sir. It was striped.

"Q. Striped. All right. Something like this, is that what you mean?

"A. Yes, sir.

"Q. All right. Where did the skid marks begin, Mr. Court, with reference to the Avenue A intersection?

"A. 24 feet and six inches from the curb line of Avenue A, west of the curb line.

"Q. All right. Will you put those skid marks on there and the direction of their travel as you saw them there on the scene at the time?

"A. (Witness marking on diagram)

"Q. All right. In other words, did these skid marks continue in a straight line down the street, or did they veer to one side or the other?

"A. They veered slightly to the right.

"Q. And can you remember at this time how many inches or feet they veered to the right, Mr. Court?

"A. No, sir, I—I do recall that they were all in the inside lane.

"Q. Uh-huh.

"A. But they did veer to the right and never did leave the inside lane.

"Q. Now, I believe you told us that they started here at a point—

"A. 24—

"Q. —24 feet from—

"A. Yes, sir.

"Q. —and six inches from the curb line there?

"A. Yes, sir.

"Q. All right. Now, how far did these skid marks extend to the west?

"A. 62 feet, six inches.

"Q. Will you write that up there, 62 feet and six inches, please?

"A. (Witness marking on diagram)

"Q. Will you step back just a minute, Mr. Court?

"A. Yes, sir.

"Q. Now, Mr. Court, are we to understand that this is 62 feet and six inches from the beginning mark? That is, where you could see the black marks—

"A. Yes, sir, that's correct.

"Q. —on the pavement down to the end of the black marks?

"A. Yes, sir.

"Q. Is that the way it was?

"A. Yes, sir.

"Q. All right, sir. And what else did you see there at this—the scene of this accident, Mr. Court?

"A. The vehicle was still there.

"Q. Where was it sitting? Had it been —with reference to these skid marks?

"A. It was still in the—in the traffic lane.

"Q. Still sitting there?

"A. Yes, sir.

"Q. All right. And in measuring these 62 feet and six inches, did that include up to the—

"A. Yes, sir, to the front—

"Q. —front wheel—front tire, rather?

"A. Yes, sir."

It is undisputed that appellee was sixty some odd feet from appellant when he

first realized her peril. Then the only question to be determined is: Did appellee fail after such discovery to exercise ordinary care in the use of the means at his command to avoid the injury? In other words, was appellee negligent? The doctrine of discovered peril only involves negligence arising after such actual discovery. Malone v. City of Plainview, 127 S.W.2d 201 (Tex.Civ.App.-Amarillo, 1939, writ dism'd); Cannady v. Dallas Ry. & Terminal Co., 219 S.W.2d 816 (Tex.Civ.App.-Fort Worth, 1949, no writ). There is evidence in this case that if the appellee had not put on his brakes but had turned to the right he might have missed the appellant. It is from that evidence we think that the jury found appellee failed to use the means at hand to avoid injury to appellant because there was no other evidence or contention that there was any other way appellee could have avoided the injury after discovering appellant's peril. The jury, however, held such failure was not negligence because appellee did not fail to exercise ordinary care in the use of the means at his command to avoid the injury. The appellant testified she saw the appellee before she ever started across the highway and thought that she had time to cross and never looked for the car again. It was after appellant stopped and then started again that appellee realized her peril. It is not what might have been done but did appellee, under the circumstances, do what a reasonable person would have done under the same or similar circumstances. The appellee sounded the horn and locked his wheels and then could not turn either way. Appellant did not offer any testimony which even had a tendency to show that appellee had no reason to believe, after he discovered appellant's perilous position, that appellant could or would free herself from the impending danger, which is one of the elements of discovered peril that appellant was required to prove. Sisti v.

Thompson, 149 Tex. 189, 229 S.W.2d 610 (1950); Arnold v. Busby, 298 S.W.2d 627 (Tex.Civ.App.-Amarillo, 1957, writ ref'd n. r. e.).

It is stated in R. T. Herrin Petroleum Transport Co. v. Proctor, 161 Tex. 222, 338 S.W.2d 422 (1960) as follows:

"The Court of Civil Appeals indicated that there was evidence that Barron could with safety have pulled off the pavement on the shoulder and *thereby avoided the collision*. The plaintiff also suggests that Barron could have applied the brakes sooner than he did or that he could have applied just the right amount of pressure to the brake pedal so that the air brakes would have caused the wheels to turn slowly but not lock, thus diminishing the time required to stop the truck. There was evidence that a braked but slowly turning wheel exerts more friction on the road surface than does a sliding or skidding wheel.

"We are unable to agree with any of these theories. In order to charge one with liability under the doctrine of discovered peril, there must exist a clear chance to avoid injury which could have been reasonably perceived by the party sought to be held. Terry v. English, 130 Tex. 632, 112 S.W.2d 446; Schuhmacher Co. v. Posey, 147 Tex. 392, 215 S.W. 2d 880; Morreale v. Cohen, 158 Tex. 291, 310 S.W.2d 737; Welch v. Ada Oil Co., Tex.Civ.App., 302 S.W.2d 175, wr. ref. n.r.e."

We know of no clear chance appellee, after discovering appellant's peril, had or could have reasonably perceived to have averted the injury. He was faced with an emergency and immediately sounded the horn and locked his wheels and skidded into appellant.

Judgment of the trial court is affirmed.