**TIDY DIDY WASH, Inc. et al. v. BARNETT et al.**
**No. 12359.**

Court of Civil Appeals of Texas. Galveston.

Jan. 31, 1952.

Rehearing Denied Feb. 21, 1952.

F. Warren Hicks, Houston, for appellants.

Thomas B. Weatherly, Houston, Vinson, Elkins & Weems, Houston, of counsel, for appellees.

CODY, Justice.

This action was brought by appellee Barnett against appellants Tidy Didy Wash, Inc., and John A. Cronin, to recover damages for personal injuries, alleged to have resulted from a collision between the truck which appellee was driving, and a Packard automobile belonging to appellant Tidy Didy Wash, Inc., which was then being driven by appellant Cronin in the course of his employment for said corporation, which collision occurred in Houston, at the intersection of Pierce Avenue and Main Street. Appellee alleged that the collision was proximately caused by the negligence of appellant Cronin in certain particulars. Appellee sought personal damages in the sum of $12,500.

Since no question is raised on appeal with respect to the pleadings, we deem it unnecessary to refer further to them except to say that in addition to filing an answer, appellants also filed a cross-action against appellee, and against Brown and Root, whose employee appellee was.

It was undisputed: That the collision occurred in broad daylight. That the movement of traffic at the intersection was controlled by signal lights. That traffic lawfully moves both directions on Main Street; but Pierce is a one-way street on which traffic could lawfully move only toward the east. That at the time the accident occurred, appellee was driving south on Main, and appellant Cronin was driving east on Pierce.

The court overruled appellants' motions for directed verdicts which were seasonably made in the main action, and submitted the case to the jury upon special issues, which, as answered by the jury, found, among other things:

(1) That appellant Cronin drove his Packard into the intersection of Pierce and Main when the traffic signal was red in the direction he was traveling. (2) That this was a proximate cause.

(3) That said appellant was driving at a greater rate of speed than an ordinarily prudent person would have under the circumstances. (4) That this was a proximate cause.

(5) That said appellant failed to keep a proper lookout. (6) That this was a proximate cause.

We deem it proper to give special issue No. 11 verbatim: "Do you find from a preponderance of the evidence that at the time of and immediately before the collision in question the Plaintiff, L. P. Barnett, failed to keep such lookout for automobiles traveling in an easterly direction on Pierce Avenue at its intersection with Main Street as a person of ordinary prudence in the exercise of ordinary care would have kept under the same or similar circumstances?"

To which the jury answered: "No."

Appellants seasonably filed a motion for judgment notwithstanding the verdict which was overruled. The jury found in answer to the damages issues that appellee had sustained damages amounting to $12,500. The jury further found that in the future he would propably expend $750 in treatment. Appellee filed a remittitur to reduce his damages to the sum of $12,500, which was the sum sued for. And the court rendered judgment for appellee in the sum of $12,500, and that appellants recover nothing.

Appellants have predicated their appeal upon seven formal points, the first five of which they have grouped for presentation. As so grouped, said five points present: That appellants were entitled to judgment as a matter of law upon the admissions of Barnett, and upon the undisputed evidence; that there was no evidence to support the jury's answer to special issue No. 11; that the evidence was insufficient to support such answer; that such answer was against the great preponderance of the evidence.

From the pleadings and the evidence, it is clear that a hotly-contested is-

sue below was which of the parties had the green light at the intersection? It is here appellants' chief contention that from appellee Barnett's own statements and admissions, given when he testified, it appears that he convicted himself of contributory negligence, as a matter of law, of failing to keep a proper lookout. It is well settled, of course, that if a litigant admits positive and definite facts, which, if true, would defeat his right to recover, and such admissions are not modified or explained by him, he is conclusively bound thereby. Stanolind Oil & Gas Co. v. State, 136 Tex. 5 at page 26, 145 S.W.2d 569.

The substance of Barnett's testimony, which appellants contend defeats any right on his part to recover, is: He testified that he never saw the automobile which was being driven by appellant Cronin, and which belonged to appellant Tidy Didy Wash, Inc., until after the collision. After having testified that when he approached the intersection and looked both ways, and saw nothing; and that he was over half way through the intersection before the collision occurred; and that there was no obstruction to prevent him from seeing traffic moving east on Pierce towards its intersection, the following questions were asked Barnett, who made the indicated answers:

"Q. Mr. Barnett, my question is when you approached the intersection of Pierce and Main Street there, if you had looked as you entered the intersection if you had looked to your right, how far could you have seen down Pierce Street? A. I don't think I could have seen more than three or four blocks.

"Q. Three or four blocks. A. If that far, and I could not have seen that far driving fifteen or twenty miles an hour and been able to have told whether there was a car coming in any direction or not, three or four blocks.

"Q. What I am wanting to know, Mr. Barnett, is whether you entered the intersection of Pierce and Main Street there, going at the rate of speed you say you were going if you had looked to your right how far could you have seen? A. I really don't know, sir. I have not tried looking

to see how far I could see, traveling like that. I imagine I could see a couple of blocks.

\* \* \* \* \* \*

"Q. At that time Pierce Street was a one-way street? A. That is right.

"Q. But when you drove up to Pierce Street you looked to your right and then to your left. A. That is force of habit. I think everybody does it.

\* \* \* \* \* \*

"Q. But notwithstanding the fact that you say that when you came up to Pierce and Main Street and you say that you looked to the right on Pierce Street and you could see two blocks down Pierce Street, you did not see Mr. Cronin's automobile? A. No, sir, I didn't say that I looked two blocks, I said I looked forty or fifty feet.

\* \* \* \* \* \*

"A. There was no occasion for me to [look but forty or fifty feet], because I had a green light.

"Q. What was the occasion, if at all, for you to look if you had a green light? A. Don't you?

"Q. I repeat, it is up to you to answer my question. A. It is just force of habit."

It is appellants' contention that Barnett's evidence showed as a matter of law that he was not in the exercise of due care in looking out for his safety, and that he convicted himself of contributory negligence as a matter of law. In support of their contention, appellants rely on the line of authorities which hold: that a failure on the part of a plaintiff, where he has a duty to look, to see what is plainly visible when he looks, constitutes contributory negligence as a matter of law. Whether or not such line of authorities is here applicable depends upon whether Barnett had a legal duty, under the facts and circumstances there present, to look to his right, down Pierce Street, far enough to see the Packard automobile, and anticipate that it would run the red light.

It is always the duty of every adult to exercise ordinary care for his own safety, inclusive of the duty of keeping a proper lookout. Whether or not a plaintiff exercised due care is ordinarily a question

for the jury. Texas & P. Ry. Co. v. Day, 145 Tex. 277, 197 S.W.2d 332, 333. Barnett's testimony, referred to and quoted above, showed that when he approached the intersection, he had a green light, but that he looked up and down Pierce Street a distance of forty or fifty feet. This was enough to bring the question of whether Barnett was exercising due care within the rule " * * * where there is evidence showing some care, and the question is one of the sufficiency of the care, a question of fact for the jury is presented." Henwood v. Gilliam, Tex.Civ.App., 207 S.W.2d 904, 910 (writ refused).

▆▆▆ The mere fact that there were signal lights at the intersection to control the movement of traffic therethrough, did not relieve Barnett of his common law duty to exercise due care to keep a proper lookout for traffic approaching the intersection from his right, even though he had a green light. Edson v. Perry-Foley Funeral Home, Tex.Civ.App., 132 S.W.2d 282. For that matter, even though Pierce was a one-way street, the common law obligation of Barnett to keep a proper lookout for his own safety remained in force so that he was not relieved from the duty to keep such a lookout for traffic moving west through the intersection, as a reasonably prudent person would have exercised under the same or similar circumstances. That does not mean that he was bound to anticipate that other motorists would violate the law. And, of course, due to the fact that it was unlawful for traffic to move west on Pierce, less care on his part to observe if traffic might run into him from the west, would satisfy his common law obligation to exercise that degree of care for his own safety from danger from that quarter which a reasonably prudent person would have exercised, under the same or similar circumstances. By what has just been said, we are emphasizing that a person is never free from his obligation to exercise due care for his own safety, but that, in application to circumstances, the degree of care required differs, and so presents a jury question. It was upon this principle, no doubt, that the decision in Seinsheimer v. Burkhart, 132 Tex. 336, 122 S.W.2d 1063,

1065, Com.App., involving traffic signals at a streetcrossing, was based. It was there held that a pedestrian crossing a street on a green light was not charged by law with the duty of looking up the street beyond the intersection to discover approaching cars and anticipate that the drivers may disobey signal lights. The court there said: "All issues relevant to this contention are fact issues which have been resolved against the contention of the plaintiffs in error." The quoted holding applies equally here. Under the evidence here presented, the jury was amply warranted in answering special issue No. 11 in the negative, that Barnett did not fail to keep such a lookout for automobiles traveling in an easterly direction etc., on Pierce. He was not by law charged with the duty to do more than exercise ordinary care for his own safety. His situation does not fall within the rule relied on by appellants. We overrule their points 1–5, inclusive.

▆▆▆ Appellants' sixth point presented that the award of $12,500 damages was grossly excessive. We have frequently discussed the questions of the excessiveness of an award of damages and believe no good purpose would be served in again discussing the standards which must govern a court of civil appeals in determining whether or not a verdict is grossly excessive; and, if so, the amount by which such a verdict is so grossly excessive that it cannot be allowed to stand unless a remittitur is filed in a specific amount. It is always helpful, where excessiveness of a verdict is presented, for the defendant to state the amount by which he deems the verdict to be too grossly excessive to be allowed to stand. The appellants have followed this commendable practice and assert that the verdict is grossly excessive by the sum of $10,000.

The evidence here shows that appellee has lost but a week from his work as a result of the accident; that he still suffers from his coccyx, or tailbone; that it aches, not so that he is unable to work, but to the point where he is always conscious of it; that it does not normally pain him greatly, but bothers him all the time. If he sits on anything hard, it begins to pain him; that

it pains him worse after a day's work than it did before he got up in the morning; that he takes no treatments for it except that his wife rubs it, which may help. He testified, "The only way I can describe the pain, if you have ever mashed your finger, you know how it will throb; it is not quite that bad but that is the feeling I have, just a burning sensation."

He went on to testify that in addition to the normal ache after a day's work, there are terrible pains which run into his back.

The evidence shows that appellee had an earning capacity at the time of his injury of $90 per week, or $4,680 per year, with a life expectancy of 36.73 years. The testimony of Dr. Cull, who treated appellee, was that in his opinion appellee had suffered permanent partial disability from doing the labor he was required to do, up to 20%. That the condition will remain with appellee the rest of his life; that it could not be relieved by surgery and makes him tire easily, and that there is no medical solution for his condition; that he examined appellee for leg atrophy because he was limping when he first examined him; that the affected leg was ½ inch less in circumference than the right leg, when first examined. At the time of the trial this condition had worsened, the left leg then being an inch less in circumference than the other leg. This was progressive atrophy, or shrinkage; that appellee had also suffered traumatic arthritis; and, in the doctor's opinion, salts were forming where the hip joint fits into the body; that appellee would be forced to use his left leg less and less, and this would gradually affect his working life.

We are unable to hold that under the evidence considered in the light most favorable to the award made by the jury that the verdict was so grossly excessive that it should not be allowed to stand. Appellants' sixth point is overruled.

Appellants complain in their point seven of the court's refusal to allow them to prove that appellee did not file a claim for Workmen's Compensation benefits for the injuries made the basis of this suit. The record here shows that on cross-examination appellee admitted that he refused to submit to a medical examination which appellants requested. The court refused to permit appellants to show that appellee did not file a claim for Workmen's Compensation benefits, or to show that appellee knew that the doctor who treated him for the compensation carrier was the doctor for his employer's Workmen's Compensation carrier. It was appellants' position that such evidence would have a tendency to show, and would support the inference, that appellee's injuries were less serious than he claimed.

It is well settled that if the excluded testimony was material and admissible, and if such excluded testimony, if believed, would have justified a different result, then its exclusion was reversible error. We deem the evidence sought to be drawn from appellee, concerning his failure to file a claim for Workmen's Compensation benefits, was not admissible, and that its exclusion was not error. Section 6a, art. 8307, of the Workmen's Compensation Act, provides, where an injury was caused under circumstances creating legal liability in a party other than the employer, that the employee has an option either to proceed against the third party, or to seek compensation benefits, but that if he elects to proceed against the third party, he cannot proceed against the compensation carrier.

The very fact that appellee was suing third party defendants on their common law liability established that he had elected not to pursue his option to seek compensation benefits, given by the statute. Why appellee may have elected to pursue his remedy against third party defendants was not a matter concerning which he was under any obligation to answer to appellants, and such matter might be confusing to the jury, and was immaterial at all events in appellee's action against appellants. The seventh point is overruled.

Judgment should be affirmed, and it is so ordered.