Katie JOHNSON et al., Appellants,

v.

EAST TEXAS MOTOR FREIGHT LINES
et al., Appellees.

No. 4915.

Court of Civil Appeals of Texas.

Beaumont.

Sept. 23, 1954.

Adams, Browne & Sample, Beaumont, for appellants.

Keith, Mehaffey & McNichols, Beaumont, for appellee.

ANDERSON, Justice.

Lumes Johnson was killed shortly before noon on February 21, 1952, when an automobile which he owned and in which he was riding, but which was being driven by Delores Walters, was in collision with a truck which was owned by East Texas Motor Freight Lines and which was being driven for it by Cleveland Como. Katie Johnson, Lillie Wilson, and James Henry Jones, the wife, mother, and father, respectively, of Lumes Johnson, brought this suit to recover damages alleged to have been sustained by them as a result of the latter's death. They sued both East Texas Motor Freight Lines and Cleveland Como. Upon a jury's verdict, judgment was rendered in favor of the defendants, and the plaintiffs have appealed.

The collision occurred at the intersection of Eleventh Street and French Drive, in the city of Beaumont, Texas. Lumes Johnson's automobile approached the intersection along Eleventh Street from the north, and was in process of making a left-hand turn into French Drive when the collision occurred. The truck was proceeding northward along Eleventh Street. The automobile appears to have completed its turn, so as to be headed along the course of French Drive, before it was struck. The driver of the truck testified that the collision occurred just as the truck entered the intersection. The truck struck the right side of the automobile, forward of the automobile's front door. Both Lumes Johnson and Delores Walters were thrown from the automobile, and the former was killed instantly.

The driver of the truck testified that he did not see the automobile until just before the moment of impact. He estimated that even a less distance than five or ten feet separated the truck and automobile when he first saw the latter. He said that after discovering the automobile, he had only just time enough to "hit" the brakes and to veer the truck slightly to its right, before the collision occurred.

There was a traffic light at the intersection, and when the Johnson automobile reached the intersection a red light or stop signal was facing traffic on Eleventh Street. It is undisputed that the automobile, which reached the intersection ahead of the truck, was brought to a complete stop. It is likewise undisputed that before it resumed its forward progress its driver had signalled, both by blinker light and by hand, her inten-

tion of making a left-hand turn into French Drive. When the light turned from red to green, the automobile was started forward into its turn; the collision followed. It seems not to be disputed that before being struck the automobile had, as already indicated, turned sufficiently to be aligned with the course of French Drive. The light changed to green before the truck reached the intersection, and the truck was not stopped until after the collision had occurred.

The truck and an automobile which was being driven by E. L. Warren, and which was travelling in the same direction as the truck, arrived at the intersection at almost the same time. There were four traffic lanes on Eleventh Street, two on each side of a dividing ridge, and the Warren automobile was in the most eastern lane. The truck was in the adjoining or "passing" lane. The Johnson automobile entered the intersection from the innermost of the two western lanes.

Mr. Warren testified that because a red light was facing him as he approached the intersection he had slowed his automobile to a speed of ten or fifteen miles per hour, and that upon seeing the driver of the Johnson automobile signal that she was going to turn left he slowed it still more. He said the traffic light turned from red to green before he reached the intersection, and that thereupon the Johnson automobile started forward, at an angle, but then paused momentarily. He estimated that he himself was then approximately fifteen feet from the intersection. He said that just at that instant he was unaware that the truck was also approaching the intersection, but that at about that time the truck passed him. He estimated that the truck was then travelling at a speed of less than thirty miles per hour; the truck driver himself testified that he was driving at the rate of about 23 or 24 miles per hour. Mr. Warren testified that when he saw the Johnson automobile pause he concluded its driver was going to wait for him to pass through the intersection; and it is to be inferred that Mr. Warren had begun to accelerate his car forward, or was about to do so, when, ac-

cording to his testimony, the Johnson automobile, after its brief pause or hesitation, was suddenly accelerated across the path of northbound traffic and directly into the path of the truck. When the Johnson automobile started forward, after its pause, Mr. Warren, according to his further testimony, in order himself to avoid colliding with it, drove his own automobile partially off the pavement and stopped it.

The driver of the Johnson automobile, Delores Walters, testified that while stopped at the intersection she saw the truck approaching, but that it was then behind two automobiles. From her observation of the approaching vehicles she concluded, she said, that she had sufficient time within which to cross in front of them, but that after she had made her turn, the truck pulled out from behind the two automobiles, and appeared to increase its speed. Thereupon, according to her further testimony, in an effort to get out of the truck's way, she accelerated the automobile she was driving. She also testified that the driver of the truck was looking at the traffic light, and not at the automobile which she herself was driving.

Cross-examination developed that in a statement made shortly after the collision the witness Walters had said she did not see the truck until just before the collision, and was not sure whether it was in the inside or the outside traffic lane when first she saw it. It was also developed that in her earlier statements regarding the collision, she had represented under oath that Lumes Johnson was himself driving the automobile when the collision occurred.

Both the driver of the truck and Mr. Warren testified that no third northbound vehicle approached the intersection with them. Mr. Warren testified that about a block from the intersection, anticipating that he might have to stop because of the red light, he looked into his rear-view mirror to see if there were any vehicles behind him, and that he saw none. He explained that because of a slight curve in the street the truck, if travelling the inside traffic lane, would not likely have shown up in the mirror.

Because a portion of it, "when I went around him," is stressed in appellants' brief, we quote the following from the testimony of the truck driver: "Q. As you approached, the light was red? A. No, sir, it was green then. It had done changed. When I passed the preacher [Warren] it changed then, when I went around him." We add, in this connection, that this witness testified he passed the Warren car approximately 150 yards from the intersection. He said the truck and the Warren car were travelling at about the same rate of speed and arrived at the intersection at approximately the same time.

The parties stipulated at the outset of the trial that the negligence, if any, of the driver of the automobile would be imputed to the deceased.

In response to special issues, numbered as indicated in parenthesis, the jury found, in substance, that Cleveland Como, the truck driver, failed to keep a proper lookout (3); that such failure was negligence (4); and that such negligence was a proximate cause of the collision (5). It did not find that the truck driver failed to have the truck under proper control (6). It found that the truck driver failed to bring the truck to a stop immediately before the collision (9); but not that this was negligence (10). It did not find that the truck was being operated at an excessive rate of speed, the circumstances considered (15). It found that the automobile entered the intersection ahead of the truck (18), and that the truck driver failed to yield the right-of-way to the automobile (19); but not that the failure of the truck driver to yield the right-of-way was negligence (20). It did not find that Delores Walters failed to have the automobile under proper control (21–A), or that she failed to keep a proper lookout (23). It found that Delores Walters permitted the automobile "to suddenly lurch forward after having checked her speed" (25), and that this was negligence (26); but not that such negligence was a proximate cause of the collision (27). It found that Delores Walters drove the automobile directly into the path of the truck (28); that this was negligence (29); and that such negligence

was a proximate cause of the collision (30). It found that after having indicated that she was going to make a left-hand turn, Delores Walters indicated by her actions that she was going to yield the right of way to the oncoming vehicle" (31); that after having indicated that she was going to yield the right-of-way she failed to do so (32); and that this failure was negligence (33); but not that such negligence was a proximate cause of the collision (34). It found that the collision was not the result of an unavoidable accident (2–A). Plaintiff Katie Johnson was found to have sustained damage in the amount of $6,500; and plaintiff Lillie Wilson was found to have sustained damage in the amount of $1,200.

The plaintiffs made motion for judgment non obstante veredicto, setting up both that the findings made by the jury in response to special issues 28, 29 and 30 are without support in the evidence, and that they are contrary to the law of the case; for which reasons it was moved that such findings be disregarded. In the alternative, they alleged that the answers to issues 28, 29 and 30 are in conflict with the answers to issues 18, 19, 21–A, and 23. They prayed for judgment, and in the alternative, because of the alleged conflict of findings, for a new trial. The motion was overruled. Plaintiffs' motion for new trial presented each of these matters for revaluation by the trial court, and in addition set up that the findings in response to special issues 28, 29 and 30 are contrary to the great weight and overwhelming preponderance of the evidence. The same matters, in one way or another, are now presented by appellants' first six points, for review by this court.

■ We are unable to agree that the findings made by the jury in response to special issues 28, 29 and 30 are in irreconcilable conflict with the findings made in response to special issues 18, 19, 21–A and 23, even when the negative findings made to issues 21–A and 23 are construed as positive findings that the driver of the automobile both had it under proper control and was keeping a proper lookout. Even though

the automobile entered the intersection first, and the truck failed to yield the right-of-way, and even though the driver of the automobile may have had it under proper control and may have been keeping a proper lookout, such driver, in the exercise of bad judgment, even while looking directly at the truck, may yet have undertaken to cross in front of it, when a person of ordinary prudence, in the exercise of ordinary care, even though believing himself to be entitled to the right-of-way, would not have undertaken to do so.

We are likewise unable to agree that the law of the case precluded, or rendered of no legal effect, the findings made by the jury in response to special issues 28, 29, and 30. For at least two reasons, we cannot accede to appellants' argument that since the automobile entered the intersection ahead of the truck, and its driver had given a proper signal of her intention to make a left-hand turn, the automobile was, as a matter of law, entitled to the right-of-way, and that, such being the case, the act of the driver of the automobile in driving it into the path of the truck cannot, in law, be either negligence or a proximate cause of the collision. In the first place, for reasons presently to be stated, we cannot agree that under the evidence the automobile was indisputably and as a matter of law entitled to the right-of-way. In the second, even if she was technically entitled to the right-of-way, the driver of the automobile was still under the duty of exercising due care for the safety of herself and others. Stehling v. Johnston, Tex.Civ.App., 32 S.W.2d 696, writ refused; Lewis v. Martin, Tex. Civ.App., 120 S.W.2d 910, writ refused; Jimmie Guest Motor Co. v. Olcott, Tex.Civ. App., 26 S.W.2d 373; Checker Cab Co. v. Wagner, Tex.Civ.App., 199 S.W.2d 791; Tidy Didy Wash, Inc., v. Barnett, Tex.Civ. App., 246 S.W.2d 303, writ refused. Whether or not she exercised such care was a matter to be determined on the whole of the evidence.

The appellants have directed our attention to no statute under which it is claimed the automobile was entitled to the right-of-way, but have cited in support of their contention the case of Moncada v. Snyder, 137 Tex. 112, 152 S.W.2d 1077, a case in which the fact situation before the court made applicable Section 71(a) of Article 670ld, V.A.C.S. Said section provides: "The driver of a vehicle approaching an intersection shall yield the right-of-way to a vehicle which has entered the intersection from a different highway." We are of the opinion, however, that the question of whether in this instance the automobile was technically entitled to the right-of-way must be governed by Section 68(a) and 72 of Article 670ld rather than by Section 71(a) thereof. Section 68(a) provides: "No person shall turn a vehicle at an intersection unless the vehicle is in proper position upon the roadway as required in Section 65, or turn a vehicle to enter a private road or driveway or otherwise turn a vehicle from a direct course or move right or left upon a roadway unless and until such movement can be made with safety. No person shall so turn any vehicle without giving an appropriate signal in the manner hereinafter provided in the event any other traffic may be affected by such movement." Section 72 provides: "The driver of a vehicle within an intersection intending to turn to the left shall yield the right-of-way to any vehicle approaching from the opposite direction which is within the intersection or so close thereto as to constitute an immediate hazard, but said driver, having so yielded and having given a signal when and as required by this Act, may make such left turn and the drivers of all other vehicles approaching the intersection from said opposite direction shall yield the right-of-way to the vehicle making the left turn." Certainly it cannot be said as a matter of law that in this instance the driver of the automobile waited until she could do so safely before turning left, Sec. 68(a), nor that she yielded the right-of-way to all vehicles approaching from the opposite direction which were so close to the intersection as to constitute an immediate hazard, Sec. 72.

We find the evidence sufficient to support the findings made in response to

issues 28, 29, and 30; that is, the findings that the driver of the automobile drove it directly into the path of the oncoming truck, and in so doing was guilty of negligence which was a proximate cause of the collision. It is undisputed that the automobile was driven into the path of the truck. The collision followed. The truck, which was not shown to have been running at an excessive rate of speed, was of necessity quite near the intersection, if not already up to it, when the automobile started to cross. Also, the witness Warren so testified. There was no evidence to show that it ever slowed, or that there was anything else to indicate that its driver contemplated yielding the right-of-way. In fact, the evidence was to the contrary. There was evidence from which the jury was justified in concluding that for at least a block or more immediately before reaching the intersection the truck, with nothing in front of it or between it and the automobile, had been in the traffic lane along which it entered the intersection. The jury was therefore justified in concluding that the driver of the automobile saw the truck as the latter approached, or that in the exercise of ordinary care she should have seen it. Whether the driver of the automobile was negligent in undertaking in the foregoing circumstances to cross the intersection ahead of the truck, and, if so, whether such negligence was a proximate cause of the collision, were clearly, we think, issues of fact for the jury's determination.

■ In opposition to the foregoing conclusion, the appellants urge that the driver of the automobile was not required to anticipate or foresee negligent conduct on the part of the truck driver, and that in the exercise of ordinary care she could not reasonably foresee that immediately before reaching the intersection the truck would be driven from behind two other motor vehicles, as appellants contend it was, and its speed increased. While, as a general proposition of law, it is well established that one is not ordinarily required to anticipate or foresee that another will act negligently, Texas & N. O. R. Co. v. Brannen, 140 Tex. 52, 166 S.W.2d 112; Firestone Tire & Rubber Co.

v. Rhodes, Tex.Civ.App., 256 S.W.2d 448, we fail to see wherein in this instance the rule is more advantageous to the appellants than to the appellees. Whatever advantage it affords, under the facts of the particular case, rests with the side whose vehicle was entitled to the right-of-way; and, as we have held, the evidence failed to establish that as a matter of law the automobile was so entitled. The other of appellants' contentions must be rejected because the jury was not required to accept as true the testimony of the driver of the automobile to the effect that after she herself had made her turn, the truck suddenly pulled out from behind two automobiles and increased its speed. There was, as we have previously stated, other evidence from which the jury was justified in concluding that the truck, with nothing in front of it, had been in the inside traffic lane for at least a block or more immediately before it entered the intersection. Giving to the truck driver's statement, "when I went around him," the effect contended for by appellants, and assuming that the truck had at one time been behind the Warren automobile, nothing in this witness' testimony refuted the evidence to which we have just referred. The truck driver testified that he passed the Warren automobile about 150 yards from the intersection.

■ By the other nine of their fifteen points the appellants complain of the trial court's action in overruling their objections to special issues 31 through 34. It was in response to these issues the jury found that, after having indicated she was going to turn left, the driver of the automobile "indicated by her actions that she was going to yield the right of way to the oncoming vehicles," then failed to do so, and that such failure was negligence, but not that such negligence was a proximate cause of the collision. The issues should not have been submitted, because the driver of the truck did not claim to have seen or to have been mislead by any act of the driver of the automobile, and therefore nothing she did indicating she was going to yield the right-of-way could have operated as a proximate cause of

the collision. However, the jury, after having found negligence, properly failed to find that such negligence was a proximate cause of the collision. The judgment is not based on the issues in question, and since we have concluded that nothing contained in the issues could have affected the findings on which the judgment is based, we hold that the submission of such issues was not reversible error.

For the reasons indicated, we have concluded that no reversible error is presented by the record. The judgment of the trial court is accordingly affirmed.