Robert C. WATTS et ux., Appellants,

v.

DALLAS RAILWAY & TERMINAL CO., Appellee.

No. 14917.

Court of Civil Appeals of Texas.

Dallas.

May 6, 1955.

Rehearing Denied June 3, 1955.

Marshall & Carlton, Dallas, for appellants.

Burford, Ryburn, Hincks & Ford, and Bruce Graham, Dallas, for appellee.

YOUNG, Justice.

The suit involves a right-angle intersectional collision of the Watts (appellants) automobile with a public bus owned and operated by defendant Company. Upon jury trial and answers to special issues, plaintiffs filed motion for judgment disregarding certain jury answers; which, being overruled, judgment was rendered for defendant on basis of verdict, with result of this appeal.

The material facts at issue between the parties are sufficiently reflected in said jury findings (numbered as in the court's charge), viz: That from a preponderance of the evidence, (1) defendant's operator Love drove the bus in question into the intersection (Elm and Central Expressway) at a time when the traffic control light facing him was red, which was a proximate cause of the collision; (3) said bus driver having failed to exercise ordinary care in application of brakes, also a proximate cause; (5) but that said driver was not operating his bus at a greater speed than a person of ordinary care and prudence would have driven same under the same or similar circumstances; (7) defendant's driver had failed to keep a proper lookout, which was a proximate cause of the collision; (9) that plaintiff Glenda Watts, on the occasion, was not driving her car at a rate of speed greater than a person of ordinary prudence would have operated same; (11) she did not fail to exercise ordinary care in application of brakes on her automobile at the time; (13) Glenda Watts failed to allow defendant's bus time to clear the street intersection before she attempted to enter same, which was negligence and a proximate cause of collision;

(16) that she had failed to keep a proper lookout for defendant's bus, which was a proximate cause of said collision; (18) that the collision was not the result of an unavoidable accident; (19–20) that the reasonable cash market value of plaintiff's Pontiac car before the collision was $2,575, and afterwards was $1,000; (21) compensation to Mrs. Watts for injuries sustained, inclusive of doctors, hospital and medical bills, etc., was fixed at $15,000.

Appellants advance four points as basis of appeal; in effect, that the foregoing jury findings, adverse to them (13, 16), were supported by no evidence or at least insufficient evidence; jury misconduct in that statements were made during their deliberations concerning immateriality of the issues on contributory negligence of Mrs. Watts and to effect that plaintiffs would recover despite such findings; the court's submission of issues 13, 14 and 15 was error,—over objection of appellants that same "constituted comments on the weight of the evidence, assumed duties owed by the plaintiff which were non-existent or at least disputed, assumed the lawful presence of defendant's bus in the intersection which was disputed, and were vague, indefinite and general."

Elm Street, running generally east and west, has two lanes of traffic each way; Central Expressway, lying north and south, is a one-way street northward with four lanes of traffic; each street being a main and busy thoroughfare, fifty feet wide at this intersection, and controlled by traffic signal lights. Business structures stand on each of these four corners, materially obstructing the view to travelers moving up to the intersection from either street. Main Street, Commerce, and Jackson, in that order, parallel Elm as one proceeds north on Expressway (formerly Preston Street), likewise controlled by signal lights. At about 7:00 o'clock of the evening, August 19, 1953, Mrs. Watts had turned into the Expressway from Jackson Street, going north, and, as she remembered, taking the second or third lane from her left side. She had stopped at Main Street on the signal, then proceeding through, traveling at speed of some 20 to 25 miles per hour, moving into the Elm Street intersection without pause. In the meantime, defendant's bus, traveling east on Elm Street, had arrived at the same intersection just as the signal light was changing to "red" and, without stopping, proceeded across the intersection at about 20 miles per hour; plaintiff's car colliding head-on with bus at about its middle side. The impact threw Mrs. Watts from car to pavement in vicinity of the southeast intersection of these streets, resulting in damage to her car and the personal injuries here complained of.

Under the circumstances thus generally pictured, appellants strenuously argue an absence of facts to support the jury finding that Mrs. Watts had failed to keep a proper lookout on the occasion in question, proximately contributing to the collision; or alternatively, an insufficiency of evidence tending to show "that plaintiff could have possibly avoided the collision" in this: That she was not duty bound to anticipate the presence of said bus until its entry into the intersection against the red light. She was then 25 to 30 feet south of the crossing, the only interval afforded Mrs. Watts for discovery of the bus, traveling at 20 miles per hour, at this, a blind intersection, being 1.7 seconds [1]; demonstrating, in other words, that she could not have avoided the collision in exercise of the utmost care. The contention made requires a résumé of the material testimony concerning this accident which the jury found to have been avoidable.

Plaintiff Mrs. Watts said that she accelerated speed of her car after crossing Main Street, but going only at about 20 miles per hour on entering the next intersection, Elm Street; that when she first saw the bus it was "right there" in front of her, no time to put on brakes, she realizing that at rate of speed she was traveling and way the bus was moving,

1. At 20 miles per hour, speed of bus was 29.66 feet per second; 50 feet divided by 29.66 equals 1.7.

there would be a collision; that she was familiar with the intersection, knowing there was travel on both streets; that had she seen the bus a little earlier than she did see it, she would have put on her brakes; the reason for not using them was that she did not see the bus. Here we quote from the testimony of Mrs. Watts on re-direct examination:

"Q. And as you were proceeding north on Central Expressway immediately prior to this collision, where were you looking? A. In front of me.

"Q. Were you looking at either of the lights, traffic lights? A. Yes.

"Q. Where were those lights located facing you? A. Well, to my near right and to my far left.

"Q. Were you looking at either one of them that you recall? A. Yes, sir.

"Q. Which one? A. *The one to my left.*" (Emphasis ours.) Lester May, testifying for plaintiff, witnessed the collision. He was also headed north on Expressway to the left of plaintiff; stating that on coming to Elm Street he stopped an instant for the green light, starting on, but saw the bus and stopped; the Pontiac (plaintiff's car) coming on to his right, not stopping, and hitting the bus; and that her car was moving at a slow rate of speed. Troy Birchfield, plaintiff's witness, was likewise driving north on Expressway behind Mrs. Watts; testifying that he saw the bus as it came into the intersection; that buildings to left and right on Elm Street kept one from seeing up and down that street until "pretty close" to the intersection; that plaintiff's car was not going too fast to stop, but that witness saw no indication of any slackening of speed before she ran into side of the bus.

Police Officer Rogers, arriving some ten minutes later, testified that the point of collision of vehicles was 36 feet into the Elm Street intersection, the automobile having penetrated four feet therein; Mrs. Watts telling him that she did not see the bus before the collision. Among defend-ant's witnesses to the accident were the following: Glen Stanford, driver of a streetcar bus traveling east on Elm Street immediately behind the one involved, stating that plaintiff's car came on by other stopped cars and ran into side of the bus ahead; Neona Waits, a passenger on the bus in question, sitting on right-hand side, directly above point of collision, placed the bus in middle of the intersection before the automobile entered same; that the Watts car passed vehicles in other lanes of travel on Expressway and came on through; not slackening speed until it hit the bus, but that the Pontiac could have stopped before the collision.

The foregoing testimony portrays another of these all too frequent intersectional collisions of motor vehicles; and while the fault of defendant's bus operator must be admitted, appellants strenuously argue the absence or insufficiency of evidence raising any issue of negligence chargeable to Mrs. Watts. Applicable generally to the record as made are the following principles of law: (1) "A motorist approaching intersection controlled by traffic signals and having a stop sign on the intersecting highway cannot close his eyes to approaching automobiles from his right and left and must use ordinary care in keeping a proper lookout for his own safety regardless of the signal lights and signs that are placed at the intersection." Todd v. La Grone, Tex.Civ.App., 234 S.W. 2d 99, syl. 2. (2) "A modern traffic signal system at intersection does not relieve driver of a vehicle of the duty of maintaining an adequate lookout on entering an intersection to determine whether the conditions at or near the intersection are such as may affect his safety." Edson v. Perry-Foley Funeral Home, Tex.Civ.App., 132 S.W.2d 282, syl. 1. (3) "Courts are without authority to set aside jury verdicts particularly on questions of negligence and proximate cause in damage suits upon conflicting facts. The undisputed facts must be ample and clear and the circumstances most exceptional to justify such action." Volkmer v. Curlee, Tex.Civ.App., 261 S.W. 2d 870, 872. (4) "Negligence is a question

of fact, which must be submitted to the jury, not only where there is sufficient testimony as to the actual facts to leave a reasonable doubt, but also where the inferences which might be fairly drawn from the facts are not certain and invariable, and might lead to different conclusions in different minds. Dougherty v. Robb, Tex.Civ.App.1928, 5 S.W.2d 582, error dismd. per Mr. Chief Justice Fly." 30–B Tex.Jur., Negligence, Note 16, p. 424, sec. 162. (5) "It is always the duty of every adult to exercise ordinary care for his own safety, inclusive of the duty of keeping a proper lookout. Whether or not a plaintiff exercised due care is ordinarily a question for the jury. Texas & P. Ry. Co. v. Day, 145 Tex. 277, 197 S.W.2d 332, 333. Barnett's testimony, referred to and quoted above, showed that when he approached the intersection, he had a green light, but that he looked up and down Pierce Street a distance of forty or fifty feet. This was enough to bring the question of whether Barnett was exercising due care within the rule '* * * where there is evidence showing some care, and the question is one of the sufficiency of the care, a question of fact for the jury is presented.' Henwood v. Gilliam, Tex.Civ.App., 207 S.W.2d 904, 910 (writ refused)." Tidy Didy Wash v. Barnett, Tex.Civ.App., 246 S.W.2d 303, 305. (6) "Where motorist entered intersection with traffic light in his favor and could not see street car approaching from the left because of automobiles in other lanes of traffic until it was too late to avoid collision, whether motorist was contributorily negligent in driving into intersection when his view was obstructed was for the jury." Rea v. Pittsburgh Railways Co., 344 Pa. 421, 25 A.2d 730, syl. 7.

■■■ Viewing all testimony, as we must, most favorably to the jury findings

adverse to plaintiff, undoubtedly they have support in relevant facts and circumstances. Mrs. Watts herself stated that a driver on Expressway on approaching the particular intersection could see to the right and left on Elm Street but "not too far"; witnesses in her behalf, similarly situated, testifying that they had seen the oncoming bus and stopped. At least different inferences can be drawn from the related facts concerning the sufficiency of a proper lookout on part of Mrs. Watts against which the mathematics of counsel demonstrative of impossibility to avoid the collision was not conclusive[2]. Such split-second time table must yield to the realities of the situation; and if Mrs. Watts was in position to observe the offending bus even prior to its entry into the intersection, and that its movement was such as to indicate an intention to disregard the immediate red light, she was duty bound to surrender her superior right to the crossing in interest of personal safety and that of others. This was a jury question under the instant facts; the principle involved being one of general acceptance. 164 A.L.R., Annotations, p. 68 et seq. A case well in point is Allen v. De Winne, Tex.Civ.App., 268 S.W.2d 677, 680, where the San Antonio Court, in discussing the duty of De Winne, plaintiff, to keep a proper lookout under comparable facts, held: "The precedents holding that one is under no duty to anticipate or foresee law violations (looking to the future) are not decisions that one is under no duty to appreciate a present and existing violation, which he can see if he will but look. If, as the jury may have believed, the defendant law violator was easily seen and was almost in the middle of the street before the plaintiff came to the point of intersection, the plaintiff cannot excuse a failure to look by saying he ought not to look. Time and place are important factors. The defend-

**2.** Of appellants' cited cases, holding that two seconds or less was insufficient time as a matter of law within which to avoid a collision, related to discovered peril as distinguished from responsibility incident to a proper lookout. Other of their cases turned on dissimilar fact situations; for instance, in Volkmer v. Curlee, supra, where defendant's brakes failed as he attempted to observe the stop sign, and thus was unwittingly projected into the intersection. It was there held that from standpoint of plaintiff Curlee, convicted of a failure to keep a proper lookout, the occurrence was such as could not have been foreseen.

ant was already in the middle of the street, and the violation was not something that might happen in the future, but was a presently existing and perceivable fact, at the time plaintiff came to the intersection. Effect must be given to the findings of the jury."

■ Appellants charge jury misconduct in this: That while they were deliberating, statements were made to effect that the issues involving contributory negligence (13, 16) were immaterial and that plaintiffs would recover regardless of such findings. Six of the body testified concerning the matter, Juror Swan to the fact of such an occurrence; Juror Stahl saying on direct examination that he remembered statements of that kind being made; on cross-examination, as we interpret the answers of such witness, that he did not. Other jurors said that to their knowledge, statements of that nature were not made or at least that they did not recall hearing them; Foreman Newton, that issues 13, 16 were answered last and rather promptly after requested evidence had been reproduced; he, listening to all discussions on these issues and hearing no statements that Mrs. Watts would get her money regardless of the jury findings thereon. We have read the testimony in full relative to the misconduct complained of and conclude that a conflict exists on the issue; that is, of whether same actually occurred; rendering final the trial court's ruling adverse to the contention made. Blaugrund v. Gish, 142 Tex. 379, 179 S.W.2d 266; Swaim v. Teasley, Tex.Civ.App., 249 S.W.2d 674; Hatch v. Sallas, Tex.Civ.App., 263 S.W.2d 610.

Appellants' final point argues error of the court in submitting issues 13, 14, and 15, in that such issues "constituted comments on the weight of the evidence, assumed duties owed by the plaintiff which were nonexistent or at least disputed, assumed the lawful presence of defendant's bus in the intersection which was disputed, and were vague, indefinite and general." The physical facts disclose and appellants tacitly admit that the bus first moved into the intersection, immediately followed by entry of the Watts car and collision; the bus obviously not having time to clear the crossing. Issue 13 was therefore undisputed and its submission surplusage; not subject, however, to the other listed objections. Though the bus was wrongfully in the intersection, appellants' right of way thereto was not absolute, but subject to the qualification that she must exercise it with due care for her own safety. Brown v. Dallas Ry. Co., Tex.Civ.App., 226 S.W.2d 135. As correctly stated by counsel for appellee, "The same theory of law which requires the plaintiff's wife to keep a lookout applies with equal force to the requirement that even though the defendant's bus was wrongfully in the intersection, Mrs. Watts' superior right to occupy and use that intersection over the right to such use by the defendant does not permit her to run the defendant down, where it is within her power by the use of proper care to give the defendant an opportunity to escape from the collision though the defendant should not have been in the intersection."

All points of appeal are accordingly overruled and judgment of the trial court affirmed.