**Rosie WASHINGTON, Appellant,**

v.

**A & A CONSTRUCTION COMPANY et al.,
Appellees.**

**No. 6795.**

Court of Civil Appeals of Texas.

Amarillo.

Sept. 22, 1958.

Rehearing Denied Oct. 27, 1958.

Huff & Splawn, Lubbock, for appellant.

Crenshaw, Dupree & Milam, Vaughn E. Wilson, City Atty., and Fred O. Senter, Jr., Asst. City Atty., Lubbock, for appellees.

PITTS, Chief Justice.

This suit was filed by appellant, Rosie Washington, acting individually for herself and as next friend for her two minor children, John Lee Washington, age 20 years, and Helen Jean Washington, age 14 years, against appellees, J. W. Miller doing business as A & A Construction Company, hereafter referred to as the construction company, and the City of Lubbock, a municipality, hereafter referred to as the city, seeking damages in the total sum of $51,-250 by reason of the death of Grant Washington, the husband of appellant and the father of the two said minor children, as

a result of the alleged negligence of appellees. Appellant alleged that the construction company, under contract with the city, dug a deep ditch for it, through the town of Littlefield, Lamb County, Texas, and that the deceased, Grant Washington, while walking along the shoulder of a road near the said ditch at nighttime, suddenly fell into the said ditch and was killed by reason of a severe blow on his head and that such resulted because of the negligence of appellees and their agents in failing to place light flares and other warnings of the danger of the open ditch at the time and place in question.

Appellees denied generally appellant's allegations, pleaded that adequate barricades, flare lights and other warnings were placed at the location of the said ditch sufficient to warn any ordinary prudent person of the presence of such and the existing conditions at and about the ditch and they further pleaded that there existed a large pile of dirt along the side of the ditch and other physical objects placed there, visible by reason of street lights near by such as would have sufficiently warned an ordinary prudent person keeping a proper lookout of the construction work in progress and of the existing conditions. Appellees further pleaded that the deceased, Grant Washington, failed to keep a proper lookout for his own safety under the circumstances and conditions existing and they likewise pleaded unavoidable accident.

Beginning October 7, 1957, the case was tried to a jury, after the trial court appointed Billy Hall, a local attorney, guardian ad litem to represent the said minors, which jury found that the failure of the construction company to place a barricade along the south side and parallel to the said ditch at the place where Grant Washington's body was found dead, was negligence which was a proximate cause of the death of Grant Washington. It likewise found that the construction company had negligently failed to place adequate flares along the south side of the ditch on the

occasion in question but that such a failure was not a proximate cause of the death of Grant Washington. None of the foregoing findings has been attacked by either party. Without objections of appellant, the trial court also submitted Special Issues Nos. 6 and 7 inquiring if the deceased, Grant Washington, failed to keep a proper lookout for his own safety on the occasion in question and if such failure, if he did so fail, was a proximate cause of his death and the jury found in answer thereto that Grant Washington did fail to keep a proper lookout for his own safety on the occasion in question and that his failure so to do was a proximate cause of his death. The jury further found that such was not the result of an unavoidable accident and that it would take $13,000 to reasonably compensate Rosie Washington for the loss she sustained by reason of the death of her husband, Grant Washington, and $500 to compensate John Lee Washington and $2,-500 to compensate Helen Jean Washington for the losses they sustained, respectively, by reason of the death of their father.

After the jury verdict was received and before judgment was rendered, appellant, on October 10, 1957, filed her motion seeking to have the trial court set aside and disregard the jury findings in answer to Special Issues Nos. 6 and 7 finding that Grant Washington failed to keep a proper lookout for his own safety and that such failure was a proximate cause of his death for the alleged reason that there was no evidence to raise such issues and no evidence to support the jury findings thereon. The matters pending were considered by the court until December 5, 1957, when it in effect overruled appellant's said motion to disregard the findings of the jury in answer to Special Issues Nos. 6 and 7 and rendered a "take nothing" judgment against appellant and the minor children and for both appellees upon the jury verdict, which verdict convicted the deceased, Grant Washington, of contributory negligence. Appellant perfected her appeal to this court and presents two points here charging in

effect that the trial court erred in submitting Special Issues Nos. 6 and 7 to the jury concerning contributory negligence of the deceased, Grant Washington, and in receiving the jury findings thereon for the reason there was no evidence, or at least insufficient evidence, to support such issues and the findings thereon made by the jury.

■ There was no direct evidence showing how Grant Washington met his death. The parties having joined issues on this question, the burden was upon appellant to show how he met his death. There was direct evidence to the effect that he, his wife and two minor children were of the Negro race and lived in what was known as "The Flats" in Littlefield, Texas; that Grant Washington was 59 years of age and except for arthritis in his back he was well and able to work on a farm, as a carpenter and in a furniture store, and he was a man of more than average intelligence for his race and well acquainted with the area where the accident occurred, although that part of the ditch in question where the body was found had been dug while he was out of town; that a few days before his death he made a trip to Amarillo, Texas, and returned to Littlefield by bus on December 14, 1956, arriving at the bus station there about 7:30 p. m. o'clock after dark; that he left the bus station soon after his arrival, walking, and was last seen walking east along U. S. Highway 84, which runs southeast and northwest through the town of Littlefield, going toward the place of the accident but some distance therefrom; that the accident occurred at a point where the ditch had been dug 9 or 10 feet deep at right angles with and up near to the east side of U. S. Highway 51, which highway runs north and south through Littlefield and crosses U. S. Highway 84 in Littlefield; that the said ditch had been dug by the construction company for the City of Lubbock up to within two or three feet from the east edge of Highway 51 then tunneled under the said highway to the west side thereof and was then dug continuously west therefrom for some dis-

tance, thus crossing the said highway at a right angle but tunneled underneath it, and the dead body of Grant Washington was found at 7:30 or 8:00 a. m. o'clock next morning, December 15, 1956, in the bottom of the said ditch five to ten feet east of the edge of U. S. Highway 51; that there were two separate trails or foot paths from 30 to 60 feet apart running across open lots and the railway right-of-way east of U. S. Highway 51, both paths being commonly used by the public but particularly by the pedestrians who lived in the Flats, and more particularly by the deceased during his lifetime, but the nearest path to the east edge of Highway 51 where the body of the deceased was found was 30 feet or more from the said highway and the point where the body was found. Although the two paths lead toward that part of town where the deceased lived, there was no evidence to the effect that anybody saw Grant Washington walking along either of the two pathways at any time on the night of the accident or along the shoulder of U. S. Highway 51 or even near there on the said occasion, although his body was found next morning in the ditch near the east edge of Highway 51 and some 30 feet or more from the nearest trail or foot path shown to exist. Neither was there any evidence that there existed a metal object in the bottom of the ditch which the deceased allegedly struck his head on and was by reason thereof killed as claimed by appellant, although there was medical testimony to the effect that a head injury must have caused his death. There was also direct oral testimony to the effect that prior to the death of the deceased the construction company, after proper authority had been granted, was in the process of digging the ditch in question through the town of Littlefield 9 or 10 feet deep and 5 feet 2 inches wide for the purpose of laying 42-inch water pipe therein for the benefit of the City of Lubbock; that at the time and place where the body of the deceased, Grant Washington, was found and immediately prior thereto the said ditch had

**812**

been dug as previously herein stated and the dirt taken therefrom had been piled one and one-half to two feet high near the end of the ditch immediately east of Highway 51 and sloping to the edge of the said highway at the point where the ditch was tunneled under it and the dirt was piled higher up, even to six feet high, along the side of the ditch east of the highway for some distance and the said 42-inch pipe had been laid on the ground by the side of the said ditch; that at the time and place where the body of deceased was found and on the night of December 14, 1956, wooden barricades 10 feet long had been placed and existed along both the east and the west side of the pavement of Highway 51 and parallel with the same at the end of the ditch which was tunneled under the highway pavement and where the body of the deceased was found next morning; that there were three lighted flares, one placed at each end of the barricade on the east side of the pavement and another near by, all of which were still burning the next morning when the body was found near by and there also existed on the ground near by a black and white luminescent metal marker 10 inches wide and 3 feet high as a warning; that the construction operators did not close down for the night in question but were continuously operating a well lighted ditching machine that made a very great noise within 400 feet of the place where his body was found; that there existed two street lights located near the said place, one of them being 138 feet northeast of the said place where the body was found and the other located 114 feet northwest of the said point. The existence of practically all of the markers and warnings were also shown on a plat or sketch professionally prepared and introduced in evidence.

■ ■ The controlling question to be here determined is whether or not there was sufficient evidence of probative force heard to support the jury findings to the effect that the deceased did not keep a proper lookout for his own safety at the

time and place in question and that such failure was a proximate cause of his death. If there was such evidence sufficient to support such findings, appellant's motion was properly overruled by the trial court and its judgment should be affirmed. The rule governing this matter was stated by this Court in the case of Brown v. Dallas Ry. & Terminal Co., Tex.Civ.App., 226 S. W.2d 135, 136 (writ refused) in the following language:

"In determining if a motion to set aside and disregard findings of a jury should be sustained, the court must view all the testimony in the light most favorable to the verdict making such findings, and, if there is evidence of probative value to support such findings, the motion to set them aside and disregard them will be overruled. Cannady v. Dallas Ry. & Terminal Co., Tex.Civ.App., 219 S.W.2d 816; and Le Master v. Fort Worth Transit Co., 138 Tex. 512, 160 S.W.2d 224."

■ According to the direct evidence heard, Grant Washington could not have walked along the shoulder of the road and have fallen in the ditch where his body was found, as claimed by appellant, without passing close by the barricades, the light flares, the piles of dirt, the pipes piled by the ditch and other warnings of danger shown to have been there and visible by reason of near by flares and street lights. Because of the presence of all of the visible warnings of the existing conditions shown by direct evidence in the case at bar the jury was justified in concluding that any person in the exercise of ordinary care would have kept a proper lookout for his own safety as he approached the scene where the body of the deceased was found and that his failure so to do was a proximate cause of his death. For the reasons stated it is our opinion that Special Issues Nos. 6 and 7 were properly submitted to the jury by the trial court and that there was ample evidence of probative value to support the jury findings in answer thereto. It is our opinion further that the trial court

properly overruled appellant's motion to disregard the issues in question and its judgment should be affirmed. We think our disposition of the case is well supported by the following additional authorities: Missouri, K. & T. R. Co. of Texas, v. Long, Tex.Civ.App., 293 S.W. 184; Fort Worth & D. C. R. Co. v. McCrummen, 63 Tex.Civ. App. 594, 133 S.W. 899; Watts v. Dallas Ry. & Terminal Co., Tex.Civ.App., 279 S.W.2d 400; Barry v. Patterson, Tex.Civ. App., 225 S.W.2d 864; 65 C.J.S. Negligence § 206, p. 960, 961; 17 Tex.Jur. 907, 908, Sec. 409; 3–B Tex.Jur. 454, 455, Sec. 940.

■ Although we have properly disposed of the controlling issues raised, we look with favor upon the counterpoint filed by appellee, City of Lubbock, contending that it was entitled to judgment in any event because appellant wholly failed to allege or prove that any written notice of her claims for damages was given to the city, which is a home ruled municipal corporation, or to allege or prove any fact or facts excusing her failure so to do as required by law and the city ordinances. Articles 1173, 1174 and 1175, Vernon's Ann.Civ.St.; 30–B Tex.Jur. 62, Sec. 674; Hallman v. City of Pampa, Tex.Civ.App., 147 S.W.2d 543; Brewster v. Baker, Tex.Civ.App., 139 S.W.2d 643.

■ While appellant's appeal bond binds her and her surety to pay the costs of this appeal, she sought therein to limit her liability to paying the costs only in case the trial court's judgment be affirmed or the appeal be dismissed, which language does not meet the requirements of the provisions of Rule 354, Texas Rules of Civil Procedure, and the requirements of the law as stated in 3–A Tex.Jur. 390, Sec. 309, and other authorities there cited. Appellant in every case must execute a satisfactory bond unless exempt by law, without limitations, conditioned that the appeal will be prosecuted and that appellant shall pay all costs in any event.

Judgment of the trial court is affirmed.