Matthew ROBERTS, Appellant,

v.

Wayne Reagan JORDAN, Appellee.

No. 7779.

Court of Civil Appeals of Texas.

Texarkana.

Nov. 1, 1966.

**526**

Bob Heath, Heath & Robinson, Houston, for appellant.

Howell Stone, Thomas W. Foster, Talbert, Giessel, Barnett & Stone, Houston, for appellee.

FANNING, Justice.

This suit arises from an intersectional collision in the City of Houston between appellant's truck and appellee's automobile.

Trial was to the court with the aid of a jury. In response to special issues submitted, the jury found to the effect that defendant-appellee Jordan entered the intersection on a red light and that this was a proximate cause of the collision; that on the occasion of the collision in question, defendant-appellee failed to keep such a lookout for other vehicles as would have been kept by a person of ordinary prudence in the exercise of ordinary care under the same or similar circumstances, and that such failure was a proximate cause of the collision; that defendant-appellee failed to timely yield right-of-way to plaintiff-appellant, and that such failure was negligence and a proximate cause of the collision in question; that on the occasion of the collision in question the plaintiff-appellant Roberts failed to keep such a lookout for other vehicles as would have been kept by a person of ordinary care, acting under the same or similar circumstances (Special Issue No. 12), and that such failure was a proximate cause of the collision in question. (Special Issue No. 13.) The jury further found $2500.00 damages for plaintiff-appellant. However, based upon the jury's findings to Special Issues Nos. 12 and 13 to the effect that plaintiff-appellant's failure to keep a proper lookout was a proximate cause of the collision, a take nothing judgment was entered by the trial court in favor of defendant-appellee Jordan. Plaintiff-appellant's motion for judgment n. o. v. and his amended motion for new trial were overruled. Plaintiff-appellant Roberts has appealed.

Appellant, among other things contends to the effect that there was no evidence to support the findings of the jury to Special Issues Nos. 12 and 13, that the evidence was insufficient to support such findings, and that such findings were against the over-

whelming weight and preponderance of the evidence.

When material facts are controverted, or are such that different inferences may be reasonably drawn therefrom, the question of fact thus raised should be submitted to the jury; it is only when the evidence is harmonious and consistent, and the circumstances permit but one conclusion, that the question becomes one of law for the determination of the court. An issue of fact is raised "if, discarding all adverse evidence, and giving credit to all evidence favorable to the plaintiff, and indulging every legitimate conclusion favorable to the plaintiff which might have been drawn from the facts proved, a jury might have found in favor of the plaintiff." Wininger v. Fort Worth & D. C. R. Co., 105 Tex. 56, 143 S.W. 1150; Maryland Casualty Co. v. Morua, Tex.Civ.App., 180 S.W.2d 194, writ refused.

If, however, the probative force of the evidence is so slight that it raises only a "mere surmise or suspicion of the existence of the fact sought to be established", it is in legal contemplation no evidence at all, and it is the duty of the trial court to direct a verdict. Joske v. Irvine, 91 Tex. 574, 44 S.W. 1059.

For a comprehensive discussion of the law applicable to the determination of "no evidence" and "insufficient evidence" points see Chief Justice Calvert's article " 'No Evidence' and 'Insufficient Evidence' Points of Error", 38 Tex.Law Rev., No. 4, p. 361.

The collision in question occurred at the intersection of Main and Benz, Houston, Harris County, Texas, between 2:00 and 3:00 P.M., Sept. 26, 1962. Appellee Jordan approached the intersection on Main Street from the north in a 1962 Ford Falcon automobile, and appellant Roberts approached the intersection on Benz Street in his truck loaded with garbage, from the west. The intersection was controlled by traffic lights on each corner. Rain was fairly heavy and steady and the street surfaces were wet. Defendant-appellee Jordan was approaching the intersection at a speed of 25 to 30 miles per hour. His visibility was several blocks or 300 to 400 yards. After entering the intersection, which the jury found was in violation of a red light, and proceeding some 51 feet across Benz, Jordan's Falcon automobile struck appellant's loaded truck at or near the left front wheel portion thereof, the front end of which truck was 26 feet from the curb on Main. Appellant's truck was traveling at the rate of about 20 miles per hour. Appellee Jordan testified to the effect that the light was green as he approached the intersection and as he proceeded into it and that he first noticed the green light some four car lengths back and started to slow down when he saw the other vehicle was going to run what he thought was a red light. Appellee Jordan's car proceeded some 108 feet from the point of impact, ending up in the northbound traffic just across the center line on Main.

Plaintiff-appellant Roberts on direct examination testified in part as follows:

"Q. Did you look to your right and left as you approached the intersection before you entered it or do you remember?

A. No, I looked—I didn't look either way, I just went straight ahead, I didn't see anything when I was going, but when I—thereabouts to the intersection where the wreck was, me and a car got there about the same time."

We quote from testimony of plaintiff-appellant Roberts on cross-examination, in part as follows:

"Q. Okay. Now you told the jury that you were, at the time that you entered the intersection, that you were not looking to your right or left but straight ahead and that is the truth?

A. That is the truth.

**528**

Q. You could not have seen the other traffic if you wanted to because your window was fogged up?

A. The one on my helper's side was up, mine was about that far from being up (indicating).

Q. It was about a finger width? (indicating a finger length)

A. Yes, from being closed.

Q. It was fogged up though from the motor being on?

A. Yes.

Q. If you had looked you probably could not have seen, could you?

A. Well, I don't know if I could have seen him or not, *because I was not looking for anyone to come up there,* he should have stopped, that was his job, my light was for me to go ahead (Emphasis added).

Q. How long have you been driving, Matthew?

A. About forty years.

Q. During that time is that the way that you drive, if the light changes for you you pull blindly out into the street not looking to the right or left?

A. Well, you drive by the caution light.

Q. You mean the traffic signal?

A. Yes, I mean the traffic signal, red, green and yellow."

We quote further from plaintiff-appellant Roberts' testimony on direct examination in part as follows:

"Q. Did you have a heater?

A. No heater.

Q. And what about the windows?

A. Windows?

Q. In your truck.

A. Well, I had mine, it was just up enough to keep the rain off.

Q. What do you mean?

A. Liking about that much (indicating) of closing so it does not fog up.

MR. HEATH: Beg your pardon?

A. Like about that much of being closed up (indicating) so you don't get no fog in there.

Q. All right. Now, was there anything that was distracting you from your driving at that time?

A. Nothing."

Only three witnesses testified in the case, appellant, appellee, and Police Officer Albert who investigated the accident. It appears from the testimony of appellant Roberts that the speed of his truck was about 20 miles per hour and it appears from the testimony of appellee Jordan that the speed of his automobile was from 25 to 30 miles per hour. The drawing of Police Officer Albert, introduced into evidence, indicates that appellee Jordan was about twice as far into the intersection as appellant, and the jury could have logically inferred that appellee Jordan must have reached the intersection first and that appellant Roberts failed to keep a proper lookout and such was a proximate cause of the collision, in view of such circumstances and in view of Mr. Roberts' testimony hereinbefore quoted.

■ The fact that plaintiff-appellant Roberts had the right-of-way at the intersecion and the fact that defendant-appellee entered the intersection on a red light would not relieve the plaintiff-appellant of the responsibility to maintain a proper look-out and to take other precautions for his own safety and the safety of others simply because he had the right of way. See Tips v.

Gonzalez, Tex.Civ.App., 362 S.W.2d 422, no writ, and authorities cited therein, wherein it was stated in part as follows:

"It is not only required that the driver of a car must look both ways before entering an intersection, even on a green light, but after entering the intersection he must keep up such a lookout for his own safety as a reasonably prudent man would do under the same or similar circumstances. Henderson v. Smith, Tex. Civ.App., 354 S.W.2d 429, no writ history; Joe D. Hughes, Inc. v. Moran, Tex.Civ.App., 325 S.W.2d 829, ref. n. r. e.; Powell v. Sanders, Tex.Civ.App., 324 S.W.2d 587, no writ history; Intges v. Dunn, Tex.Civ.App., 311 S.W.2d 877, ref. n. r. e.; Watts v. Dallas Ry. & Terminal Co., Tex.Civ.App., 279 S.W.2d 400, ref. n. r. e.; Cannady v. Dallas Ry. & Terminal Co., Tex.Civ.App., 219 S.W.2d 816, no writ history; Lewis v. Martin, Tex. Civ.App., 120 S.W.2d 910, ref.; Allen v. De Winne, Tex.Civ.App., 268 S.W. 2d 677, modified by Sup.Ct., remanded on other grounds, De Winne v. Allen, 154 Tex. 316, 277 S.W.2d 95, finding of jury held not to be against great weight and preponderance of the evidence by Court of Civil Appeals, 285 S. W.2d 895.

"The finding of proximate cause is supported by the evidence because if Tips had kept a proper lookout he might have stopped, turned, sounded his horn, or speeded up to avoid the collision."

Also in Intges v. Dunn, Tex.Civ.App., 311 S.W.2d 877, wr. ref., n. r. e., it was stated in part as follows:

"The rule is often stated that a person is not bound to anticipate negligence or unlawful conduct on the part of another. Texas & N. O. R. Co. v. Brannen, 140 Tex. 52, 166 S.W.2d 112; Seinsheimer v. Burkhart, 132 Tex. 336, 122 S.W.2d 1063. However, it does not necessarily follow as a matter of law, that a person who has the right of way at an intersection is under no duty to exercise such care for his own safety as a reasonable prudent person would exercise under the same or similar circumstances. Thus, every person proceeding along and across a public thoroughfare is under the duty at all times to maintain a proper lookout and a proper control of his vehicle for his own safety, and may not proceed blindly and heedlessly in disregard of dangers that might reasonably be anticipated to exist. De Winne v. Allen, 154 Tex. 316, 277 S.W.2d 95; Blunt v. H. G. Berning, Inc., Tex.Civ.App., 211 S.W.2d 773, writ ref.; Brown v. Dallas Ry. & Terminal Co., Tex.Civ.App., 226 S.W.2d 135, writ ref.; Tidy Didy Wash v. Barnett, Tex. Civ.App., 246 S.W.2d 303, writ ref., n. r. e.; Johnson v. East Texas Motor Freight Lines, Tex.Civ.App., 271 S.W.2d 708."

Also in Henderson v. Smith, Tex.Civ. App., 354 S.W.2d 429, no writ, it was stated in part as follows:

"The fact that plaintiff had the right of way did not excuse her from exercising ordinary care for her own safety. Although not required to anticipate negligent or unlawful conduct on the part of others, she was not entitled to close her eyes to that which was plainly visible and which would have been observed by a person of ordinary prudence similarly situated. Lynch v. Ricketts, 158 Tex. 487, 314 S.W.2d 273."

We hold that there was evidence of probative force to support the jury's findings to Special Issues Nos. 12 and 13, and that the same was amply sufficient to support such findings.

Also, after carefully considering and reviewing the entire record in this cause in the light of the rules announced in the case of In Re King's Estate, 150 Tex. 662, 244 S.W.2d 660, we further hold that the jury's findings to Special Issues 12 and 13 are not so contrary to the great weight and preponderance as to be clearly wrong and manifestly unjust.

Appellant's remaining contentions do not present error under the record in this cause. All of appellant's points have been considered and are overruled.

The judgment of the trial court is affirmed.